Argued and submitted February 9, reversed September 13, 2006

## Denise A. ROSHTO,
*Respondent,*

*v.*

## Kevin D. McVEIN,
*Appellant.*

### DR04-11-0201; A127398

143 P3d 241

James N. Esterkin argued the cause and filed the brief for appellant.

Craig Wymetalek waived appearance for respondent.

Before Haselton, Presiding Judge, and Wollheim and Rosenblum,* Judges.

WOLLHEIM, J.

---

\* Rosenblum, J., *vice* Richardson, S. J.

## WOLLHEIM, J.

Petitioner sought a restraining order against respondent, her former boyfriend, under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.742. The court issued an *ex parte* FAPA restraining order, ORS 107.718, and respondent requested a hearing. *See* ORS 107.718(8) (within 30 days of service of *ex parte* restraining order, respondent may request a court hearing). After the hearing, the trial court continued the restraining order. Respondent appeals, contending that there was no evidence that he placed petitioner in fear of imminent bodily injury. On *de novo* review, *Strother and Strother*, 130 Or App 624, 629, 883 P2d 249 (1994), *rev den*, 320 Or 508 (1995), we find that petitioner has not shown, by a preponderance of the evidence, ORS 107.710(2), that she is in imminent danger of abuse from respondent or that he represents a credible threat to the physical safety of petitioner. Therefore, we reverse.

Petitioner and respondent dated for 10 months. In July 2004, petitioner broke up with respondent over concerns that he would occasionally become irrationally upset over the possibility that petitioner might be unfaithful to him.

After petitioner broke off the relationship with respondent, he inundated her with telephone messages and e-mails professing his love and begging her forgiveness. He placed more than 20 telephone calls to petitioner's home between September 1, 2004 and November 9, 2004. In the first couple of weeks following the breakup, respondent sent petitioner 20 to 30 e-mails per day. Most of them contained single-line messages, such as "I miss you baby!"; "Plz call soon . . ."; "promise 2 be good 2U"; and "Love shall prevail." After the first two weeks, the e-mails diminished to, at most, a few a day, with many days without e-mails. In September 2004, respondent sent petitioner 14 e-mails, in October he sent two, and in November he sent 10. Respondent also came to petitioner's house without permission a few times shortly after the break up, and left her packages with lingerie on two occasions.

In her petition for a restraining order, filed in November 2004, petitioner alleged that she and respondent

had had a sexually intimate relationship and that, after she ended the relationship, he repeatedly attempted to renew it, through e-mails, telephone calls, and leaving things at her house. She alleged in her petition that she was in imminent danger of "further abuse" because "[respondent] has mental problems, is on medication and is stalking me."

The trial court issued an *ex parte* restraining order, and respondent requested a hearing. At the hearing, petitioner testified that before she and respondent broke up, he would occasionally become irrationally jealous over petitioner's friendship with a former boyfriend, and that she stopped seeing respondent because of his "violent outbursts." She testified that "he would just get really red and start breathing really hard and get just really right up in my face." She testified that they went to counseling, but the problem continued to get worse, until she finally decided to end the relationship.

The trial court asked petitioner to describe events within the six months preceding the filing of the petition that had placed her in fear of imminent bodily injury. Petitioner testified that, although respondent had never threatened her with physical harm, his continuous communications since the time of the break up, including e-mail and telephone communications of a sexual nature, despite her instructions that he stop, caused her to be afraid for her personal safety. She testified that respondent behaved abnormally. He left beef jerky in the yard for her dogs to eat, which "scares her to death." He asked institutions to send her junk mail. He tried to find her at friends' homes. He left messages on her telephone answering machine to the effect that he will never give up. Petitioner testified that because she works from her home, it is impossible for her to escape from respondent's harassment. The trial court found that "the sheer overwhelming number of attempts to contact Petitioner by Respondent, after her pleas to cease, amounted to reckless behavior that would lead a reasonable person to fear imminent bodily injury."

Under ORS 107.718(1), a court may issue a restraining order upon a showing that the petitioner

"has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that there is an imminent danger of further abuse to the petitioner and that *the respondent represents a credible threat to the physical safety of the petitioner.*"

(Emphasis added.) "Abuse" is defined in ORS 107.705(1) as:

"(a)   Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b)   Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.

"(c)   Causing another to engage in involuntary sexual relations by force or threat of force."

In this case, the alleged abuse is that respondent placed petitioner in fear of "imminent bodily injury." ORS 107.705(1)(b). Respondent contends on appeal that there is an absence of evidence that petitioner has been abused by respondent in the past, that she is in imminent danger of further abuse, or that respondent presents a credible threat to petitioner's safety.

We agree with respondent that petitioner has not established that she is in imminent danger of further abuse or that respondent presents a credible threat to her physical safety. Although it is true that an overt threat of harm is not required to authorize the continuation of an abuse prevention restraining order, *Lefebvre v. Lefebvre,* 165 Or App 297, 301, 996 P2d 518 (2000), the record must reflect evidence of both "imminent" danger and a credible threat to the petitioner's physical safety. For example, in *Lefebvre,* the respondent's conduct was

"erratic, intrusive, volatile, and persistent. He screamed obscenities in petitioner's face, unrestrained by the presence of their child, made numerous hang-up phone calls, and rummaged through her possessions. Notably, respondent's late night call describing the sleeping clothes petitioner was wearing put her on notice that he was lurking about her house, watching her, and that she was vulnerable. Moreover, petitioner knew that respondent had previously been obsessed with the idea of killing another person."

165 Or App at 301-02. We concluded that, "[d]espite the lack of an explicit threat, the totality of the circumstances supports petitioner's assertion that respondent at least recklessly placed her in fear of imminent serious bodily injury and immediate danger of further abuse."[1] *Id.* at 302 (footnote omitted).

Here, we find on *de novo* review that, although respondent's conduct caused petitioner to be afraid, there is no evidence that his conduct since the breakup gave rise to an imminent danger of abuse or a credible threat to petitioner's physical safety. For example, in September 2004, respondent sent petitioner 14 e-mails. In all of them, respondent professed his continuing love and his desire to be a family with petitioner and his son, and begged petitioner to reconsider the breakup. In October, respondent sent petitioner two e-mails, neither of which contained any threat. In November 2004, there were 10 e-mails from respondent to petitioner, many of which were "courtesy copies" purporting to keep petitioner in the loop concerning his son's school difficulties. There is no evidence of any personal contact during those months.[2] Thus, the facts here can be readily distinguished from the more heightened, persistent, and alarming circumstances in *Lefebvre.* We therefore reverse the restraining order.

Reversed.

---

[1] Formerly, ORS 107.705(1)(b) (1997) defined abuse as "[i]ntentionally, knowingly or recklessly placing another in fear of imminent *serious* bodily injury." (Emphasis added.) In 1999, the legislature amended ORS 107.705(1)(b) to delete the word "serious." Or Laws 1999, ch 1052, § 12.

[2] We note that when, as here, a contact involves speech, the court has interpreted the stalking statute, ORS 30.866, narrowly to avoid constitutional overbreadth. In *State v. Rangel*, 328 Or 294, 301-03, 977 P2d 379 (1999), the court explained that the kinds of threatening contacts that may support the issuance of a stalking protective order do not include " 'the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee.' " *Id.* at 303 (quoting *State v. Moyle*, 299 Or 691, 705, 705 P2d 740 (1985)). There is no constitutional question raised by respondent here.