Submitted on record and brief October 30, 2006, reversed and remanded for reinstatement of restraining order April 4, 2007

## Warde Jennings FIELDER,
### *Petitioner-Appellant,*

*v.*

## Mari Lynn FIELDER,
### *Respondent-Respondent.*

### Jackson County Circuit Court
### 060381R0; A131426

157 P3d 220

Charles Kochlacs filed the brief for appellant.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Brewer, C. J., *vice* Ceniceros, S. J.

## WOLLHEIM, J.

Petitioner appeals from the trial court's order dismissing his petition for a restraining order under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735. He argues that the trial court erred in concluding that he was not in "fear of imminent bodily injury" and that FAPA does not provide relief for his and respondent's son. On *de novo* review, *Rosiles-Flores v. Browning*, 208 Or App 600, 602, 145 P3d 328 (2006), we find that petitioner has shown, by a preponderance of the evidence, that respondent has placed petitioner in fear of imminent bodily injury and that petitioner is in imminent danger of further abuse.[1] We therefore reverse.

Petitioner and respondent were married in 2000. The parties and their five-year-old son live in the same household. On one occasion in 2006, petitioner planned to have dinner at a restaurant with respondent. When petitioner arrived at the restaurant, he knew that respondent had been drinking by the "look on her face." Petitioner asked respondent not to drink any more, which upset her. Respondent grabbed their son and drove away from the restaurant. When petitioner returned home, respondent started to yell and scream at him. Petitioner reiterated that he wanted respondent to stop drinking. Petitioner then noticed some empty wine bottles in the trash. When he retrieved them, respondent became more upset and began to kick and punch petitioner to provoke a fight. Petitioner testified:

> "[PETITIONER]: [S]he then started doing the kicking and hitting routine with me, which she's done in the past, and provoking a fight with me. And I just gathered my things and left the house.
>
> "[PETITIONER'S COUNSEL]: Did any of her blows with fists or feet hit you?
>
> "[PETITIONER]: Well, I just block them. * * * [She hits] me, but I would block them."

Petitioner then gathered his things and left.

---

[1] Petitioner also assigns error to the trial court's decision that FAPA does not reach a concern about the physical safety of the parties' child. Because we agree with petitioner's other assignment of error, we do not consider this assignment.

The day after the 2006 incident, petitioner filed a petition for a FAPA restraining order, which alleged that, within the preceding 180 days, respondent had attempted to cause him bodily injury by hurting or threatening him with punches and kicks. Petitioner also alleged that he was in imminent danger of further abuse by respondent, that she was a threat to the physical safety of their son because respondent drank and drove with their son, and that she used abusive language while on the phone in their son's presence.

The trial court issued an *ex parte* restraining order, and respondent requested a hearing. Petitioner was the only witness to testify. At the hearing, petitioner testified that respondent's drinking was a recurring problem. Additionally, petitioner was afraid for their son's safety when respondent drank and drove with their son in the car. Those problems prompted petitioner to file a petition for a dissolution of marriage in 2005. A custody hearing was scheduled, but petitioner withdrew his motion for a hearing regarding respondent's drinking because:

> "She basically had told me that she would stop drinking and would curb her behavior as far as being—getting upset as much. And it just—that lasted for about two weeks, and then it was just back to the same old thing."

Petitioner believed that, due to respondent's history of drinking, "things [were] just going to get worse at home for [him] and [his] son." In particular, he had concerns about their safety:

> "[PETITIONER]: We have always had this kind of relationship where when she does start drinking it just—things just automatically get out of control. And the way that I've handled it is I just grab a few things and leave; or if she calls me at work and I know that she's been drinking I just won't go home until after she goes to bed. * * * And that's the way I've been doing that * ** for a long time, at least two or three years.
>
> "[PETITIONER'S COUNSEL]: Can you do that anymore?
>
> "[PETITIONER]: No, I can't.
>
> "[PETITIONER'S COUNSEL]: Why is that?

"[PETITIONER]: I'm really afraid of what's going to happen with [our son]. To this point, you know, it's—it's not uncommon for her to jump in the car and go somewhere. And I know that if I'm not there and she's been drinking she'll jump in the car with [our son] and go maybe to get some more wine, I don't know. Or, you know, * * * she'll get in the car and leave somewhere with [our son] * * * when she's been drinking."

Petitioner testified that respondent had previously sought alcohol treatment for about a month. However, after about two years of sobriety, respondent started drinking again when taking pain medication. Petitioner also stated that, prior to the 2006 incident, she had punched and kicked him, and had given him a black eye.

After the close of petitioner's case, the court questioned petitioner's counsel about the requirements of a FAPA restraining order, emphasizing petitioner's lack of fear of respondent and the abuse:

"THE COURT: What I'm trying to do is see how * * * this can work under this statute. * * * So, that's what I'm asking you to tell me.

"[PETITIONER'S ATTORNEY]: Under [the FAPA petition, the question was:] How did she hurt or threaten you? [Petitioner answered:] 'Punches and kicking.'

"THE COURT: And what he said was, 'I just block it. She's done it for a long time.' It's clear he's not afraid of that. His testimony is just clear on that. And so * * * it would take me finding that her kicking or hitting at him placed him in fear of imminent bodily danger for me to uphold the restraining order; * * * is that correct?

"[PETITIONER'S ATTORNEY]: Yes.

"* * * * *

"THE COURT: * * * The allegation is, 'She hits and kicks at me, I just block it. She's done that for a long time. I just avoid it.' No fear there. No fear of imminent bodily injury on [petitioner's] part. It's not good conduct, but * * * [it] doesn't bring it within the statute."

After ruling that petitioner had failed to produce sufficient evidence to sustain the restraining order under ORS

107.705, the court also stated that respondent's drinking and driving with their son was not an independent basis for continuing the FAPA restraining order:

> "[THE COURT:] If she does drink and drive with [their son] in the car that's a serious problem, but it's not a basis either for a restraining order under the statute."[2]

The court dismissed petitioner's FAPA restraining order. On appeal, petitioner challenges the court's determinations that, under the totality of the circumstances, petitioner was not in "fear" of imminent bodily injury. Petitioner also assigns as error the court's subsequent dismissal of the FAPA restraining order.[3] We agree with petitioner that the trial court erred.

■ A court may issue a FAPA restraining order when the petitioner

> "[(1)] has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that [(2)] there is an imminent danger of further abuse to the petitioner and that [(3)] the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child * * *."

ORS 107.718(1). A petitioner must meet each of those requirements to obtain a FAPA restraining order. We begin by determining whether petitioner is a "victim of abuse." "Abuse" is defined as:

> "(1)  * * * the occurrence of one or more of the following acts between family and household members:

> "(a)  Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

> "(b)  *Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.*

---

[2] The trial court found petitioner's testimony credible and we defer to that determination. *See Kempke and Kempke,* 151 Or App 434, 440, 949 P2d 1239 (1997) (deferring to the trial court's assessment of credibility in the absence of reason to do otherwise).

[3] In the FAPA petition, petitioner alleged that respondent "attempted to cause [petitioner] bodily injury." However, during the FAPA hearing and on appeal, petitioner has presented the issue of whether respondent placed him in fear of imminent bodily injury and that is the issue we address here.

"(c)   Causing another to engage in involuntary sexual relations by force or threat of force."[4]

ORS 107.705(1) (emphasis added).

■     Establishing "fear of imminent bodily injury" does not require overt threats, *Lefebvre v. Lefebvre*, 165 Or App 297, 301-02, 996 P2d 518 (2000); behavior that is "erratic, intrusive, volatile and persistent conduct" combined with an "obsess[ion] with the idea of killing another person" may place a petitioner in "fear of imminent serious bodily injury and immediate danger of further abuse." *Id.* Nor does the statute require a subjective component to prove the existence of a petitioner's fear. *See Cottongim v. Woods*, 145 Or App 40, 45, 928 P2d 361 (1996) (conduct that "deviated considerably from that which a reasonable person would exhibit under similar circumstances" constituted abuse when "a reasonable person faced with such behavior would be placed in fear of imminent serious bodily harm").

■     To determine whether "fear of imminent bodily injury" has been established also requires an examination of the totality of the circumstances. For example, in *Cottongim*, we upheld the issuance of a FAPA restraining order based on the respondent's verbal and physical abuse of the petitioner. 145 Or App at 44. During the relationship, the respondent was verbally abusive to the petitioner when the respondent consumed alcohol. After their "break up," the respondent caused the petitioner bodily injury "when he entered her home against her expressed wishes, sat next to her on a couch, held her down so hard she could not move away, tried to kiss her and left bruises on her arms." *Id.* The respondent called the petitioner repeatedly and told her that "he could not live without her[,]" would "do anything he could to make [her] life hell" and wished her "a long, slow painful death." *Id.* (internal quotation marks omitted). We upheld the FAPA restraining order on those facts, finding that they provided "a more-than-sufficient basis for [the petitioner's] allegation

---

[4] Neither the trial court nor either party questioned whether (1) petitioner was a family or household member, (2) respondent committed the abuse, or (3) the abuse occurred within 180 days of filing of the petition. Accordingly, those facts are not at issue on appeal.

that [the respondent] had intentionally, knowingly or recklessly placed her in fear of imminent serious bodily injury" and that there was "an immediate and present danger of further abuse[.]" 145 Or App at 45 (internal quotation marks omitted).[5]

Here, direct physical abuse in the home establishes petitioner's fear of imminent bodily injury, especially when the abuse continues to coincide with respondent's alcohol consumption. The 2006 incident and respondent's past abuse of striking petitioner sufficiently to cause a black eye meet the thresholds articulated in *Cottongim* and *Lefebvre* by providing a "more-than-sufficient basis" for "intentionally, knowingly or recklessly" placing petitioner in "fear of imminent bodily injury." The fact that petitioner "blocked" the physical attacks or decided to leave the home when respondent was under the influence of alcohol does not in any way negate his fear.[6]

Respondent's abusive behavior continues to correlate with her alcohol consumption, and she has not been able to successfully control that behavior. Under the totality of these circumstances, we find that respondent placed petitioner in fear of imminent bodily injury and that petitioner is a "victim of abuse."

■ Next, under ORS 107.718(1), petitioner must show that he is in imminent danger of further abuse. An overt threat of physical violence is not required to support such a finding. *See Lefebvre*, 165 Or App at 301. To make such a finding, a trial court may consider testimony regarding events outside the 180-day window to satisfy ORS 107.718(1). *Lefebvre*, 165 Or App at 303. The record before us reflects a continuing pattern of respondent's abusive behavior. As long as he resides with respondent, petitioner faces the choice of returning home to verbal and physical abuse or

---

[5] ORS 107.705(1)(b) was amended by Oregon Laws 1999, chapter 1052, section 12(1)(b), to change the phrase "serious bodily injury" to simply "bodily injury." The same amendment also changed the requirement of "immediate and present danger of further abuse" to require "imminent danger of further abuse" in ORS 107.718(1). Or Laws 1999, ch 1052, § 9(1).

[6] *See* ORS 107.710(3) (stating, in part, that the right to relief under FAPA "shall not be affected by the fact that the person left the residence or household to avoid abuse").

avoiding such circumstances. Here, the pattern of direct and ongoing physical abuse meets the benchmarks of *Cottongim* and *Lefebvre*. Petitioner is in imminent danger of further abuse by respondent. *Cf. Roshto v. McVein*, 207 Or App 700, 704-05, 143 P3d 241 (2006) (petitioner failed to establish imminent danger of further abuse or credible threat to petitioner's safety).

■   We find that petitioner has met the requirements set out in ORS 107.718(1) to support issuance of a FAPA restraining order. Petitioner has established that (1) he is a victim of abuse as defined in ORS 107.705(1)(b); (2) there is an imminent danger of future abuse by respondent; and (3) respondent represents a credible threat to his physical safety.

Reversed and remanded for reinstatement of restraining order.[7]

---

[7] The initial restraining order provided that respondent was restrained from interfering with the parties' child. No issue regarding child custody was raised at the hearing, *see* ORS 107.710(5). Therefore, the issue of child custody is not an issue on remand.