Argued and submitted May 18, affirmed July 13, 2011

Tara Liza MAFFEY,
*Petitioner-Respondent,*

*v.*

Daniel Perry MUCHKA,
*Respondent-Appellant.*

Lane County Circuit Court
191008013; A145759

261 P3d 26

Howard Hudson argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Respondent appeals the trial court's continuation of a restraining order petitioner obtained against him under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735. Respondent asserts that petitioner failed to present sufficient evidence to support continuation of the order. For the reasons explained below, we disagree and, therefore, affirm.

The facts, as established by the trial court's findings and the undisputed evidence, are as follows. At the time of the hearing regarding the continuation of the restraining order, petitioner and respondent had been in a relationship for approximately 18 months, and they had a young child together. The parties' relationship was troubled for several reasons, including respondent's post-traumatic stress disorder, which caused him to behave in a highly emotional manner at times.

On Easter 2010, petitioner, respondent, and their child were living together in respondent's house. One of respondent's friends took them to church and brunch and then brought them back home. The child's stroller was accidentally left behind in the friend's car. Once home, petitioner cleaned the house and cooked dinner in preparation for company. Respondent took a nap. When petitioner realized that the stroller had been left behind, she woke respondent and asked him to call and have his friend return the stroller because she needed it the next day. Respondent became angry and asked petitioner to make the call herself. When she said that she would prefer that he make the call, he began swearing at her. According to petitioner,

> "[respondent] said, 'You can't do anything fucking right. You know, you're supposed to be a mother, you're supposed to keep this house in order.' And he just freaked out at that point. He said, 'You're walking around here like this is your house. Slamming doors, slamming cupboards.' You know, I was cooking. Of course cupboards were closing.
>
> "And * * * I was frustrated, you know. And he proceeded to jump out of bed, and he was coming at me. So I ran out of the room, was going down the stairs, and this—there's a landing, right? So I felt his hand on the back of my right

shoulder, and I turned around on the landing to defend myself so that I wouldn't go head-first. And at that point he pushed me up against the wall and was telling me to get the fuck out. And that he was tired of the way I was acting, that I didn't do my duties. And I just tried to calm him down and placate him, and I said, 'Okay, all right, all right.'

"At that point he became eerily calm and just walked away. * * * [W]hich he's told me in the past is an indication of right before he gets really violent, he becomes eerily calm. And so I just packed my things as fast as I could."

Petitioner moved out of respondent's house that night, taking the couple's child with her. Petitioner stayed with her mother for a few days and then moved into a "safe house."

Four days after moving out of respondent's house, petitioner filed for a restraining order against respondent. The trial court issued a temporary restraining order and, at respondent's request, subsequently held a hearing to determine whether the temporary restraining order should be continued. *See* ORS 107.718 (establishing process for obtaining and disputing a restraining order).

At the hearing, petitioner testified about the Easter 2010 incident. She testified that petitioner threatened her and that, when he pushed her up against the wall, it hurt and scared her. She also testified about a similar incident on Thanksgiving 2009, when respondent pushed her up against a wall and threatened her.

Petitioner testified that respondent has severe post-traumatic stress disorder and a history of getting "extremely angry" over "very small, little things." She also testified that respondent's volatile behavior had been increasing. He had kicked petitioner and their child out of his home three times in the seven months before the hearing, once by throwing their things out into a parking lot.

Petitioner testified that respondent had been "extremely controlling" throughout their relationship; he had limited her contact with other people and her access to her own money. Petitioner also testified that respondent had

repeatedly made verbal threats about his ability and inclination to act against her. He had told her, for example, that he was "a vindictive motherfucker" and that he could make her "life a living hell." He also had told her, "I will take [the child] from you, not because I want him but because I'm going to take what you love most" and "I won't stop until you have nothing left."

Petitioner testified that she was afraid of respondent and was concerned about further abuse. She testified that, after the trial court issued the temporary restraining order and she moved into the safe house, respondent violated the order by coming near the safe house on several occasions and by having a friend call her. Petitioner testified that, while living at the safe house, she felt relatively safe inside, but not outside. She stayed inside as much as possible, and, when she went outside, she tried to have another resident accompany her. Regarding the basis for her fear of further abuse, petitioner testified:

> "Well, because for one thing this is a pattern. For another, he repeatedly told me he was going to take my son from me. Now that [the child] has been placed with me, I'm afraid he might lose it. He has also made threats to me that, you know, if he can't have me and [the child], he would lose his mind, things like that. And he just has a very volatile, unstable past, and present. And I'm—I'm afraid of him."

The trial court found petitioner credible. The court noted that petitioner "presented herself in a very credible way" and that "[h]er demeanor, her tone, her description and details, are all consistent and internally reliable." The court found "no reason to disbelieve her testimony at all." Based on petitioner's testimony, which, the court noted, was essentially unrebutted, the court concluded that respondent had abused petitioner during the Easter incident, noting that "[t]here was intimidation and threat of harm, for a minimum, on that occasion." The court also concluded that, respondent's "long history and pattern of intimidation and control * * * support[ed] the petitioner's contentions of her concern for imminent danger of further abuse." The court ordered that the restraining order be continued.

On appeal, respondent argues that there was insufficient evidence to support the trial court's continuance of the restraining order. We review the trial court's legal conclusions for errors of law, but are bound by its factual findings if there is any evidence in the record to support them.[1] *See, e.g.,* *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010).

In order to obtain a restraining order, a petitioner must prove, by a preponderance of the evidence, ORS 107.710(2), that he or she has "been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that there is an imminent danger of further abuse to the petitioner and that the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child," ORS 107.718(1). On appeal, respondent argues that petitioner failed to prove either that he had committed abuse or that there was an imminent danger of further abuse. We turn first to respondent's argument regarding the sufficiency of the evidence that he abused petitioner within the 180 days before she filed her restraining order petition. ORS 107.705(1) defines "abuse," for the purposes of ORS 107.718, as follows:

" 'Abuse' means the occurrence of one or more of the following acts between family or household members:

"(a)   Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b)   Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.

"(c)   Causing another to engage in involuntary sexual relations by force or threat of force."

Thus, a person can commit "abuse," as defined by ORS 107.705(1), even if the person does not actually cause bodily injury. Abuse includes attempting to cause bodily injury, ORS 107.705(1)(a), and intentionally, knowingly, or recklessly placing another in fear of imminent bodily injury, ORS 107.705(1)(b).

---

[1] Although we have discretion to review this case *de novo*, ORS 19.415(3)(b), respondent has not requested such review, and we perceive no reason to exercise our discretion to conduct our review *de novo*. *See* ORAP 5.40(8)(c) (providing that we will exercise our discretion to review *de novo* only in "exceptional cases").

Here, petitioner presented evidence that, during the Easter 2010 incident, respondent jumped out of bed in anger, chased her down the stairs as she fled from him, put his hand on her shoulder in a manner that made her feel as if he was going to push her down the stairs head first, and then, when she turned to defend herself, pushed her up against the wall. That evidence was sufficient to establish, at a minimum, that respondent recklessly placed petitioner in fear of imminent bodily injury. Thus, there was sufficient evidence that respondent abused petitioner within the 180 days before she filed her restraining order petition.

The question then becomes whether petitioner presented sufficient evidence that there was an imminent danger that respondent would abuse her again. Evidence that a respondent has engaged in a pattern of abusive behavior in the past and will likely repeat the pattern in the near future is sufficient to support the issuance of a FAPA restraining order. For example, in *Fielder v. Fielder*, 211 Or App 688, 695, 157 P3d 220 (2007), we held that there was sufficient evidence to support a restraining order against a respondent who had a history of assaulting the petitioner when intoxicated, observing that "[r]espondent's abusive behavior continues to correlate with her alcohol consumption, and she has not been able to successfully control that behavior." *See also Rosiles-Flores v. Browning*, 208 Or App 600, 605, 145 P3d 328 (2006) (evidence of respondent's abuse of petitioner on three occasions and his continued attempts to contact her were sufficient to support issuance of restraining order).

In this case, petitioner presented evidence that respondent had engaged in a pattern of controlling and abusive behavior toward her. As the trial court found, respondent had attempted to control petitioner through threats and intimidating actions. His behavior had been volatile and aggressive, and petitioner testified that it had been escalating. As described above, on both Thanksgiving 2009 and Easter 2010, respondent had pushed petitioner up against the wall and threatened her.

Respondent's actions reflect a continuing desire to control petitioner and a willingness to menace and physically harass her in order to do so. Respondent has told petitioner

that he is vindictive and that he could make her life "a living hell," and he has expressed a desire to take their child from her. Significantly, respondent persisted in his controlling and intimidating conduct toward petitioner even after the trial court issued the temporary restraining order; he violated the order by coming near the safe house and having a friend call petitioner. The evidence of respondent's past and continuing behavior toward petitioner was sufficient to establish that petitioner was in imminent danger of further abuse.

Affirmed.