Submitted April 18, affirmed September 8, 2011

Teresa Jane HUBBELL,
*Petitioner-Respondent,*

*v.*

Steven SANDERS,
*Respondent-Appellant.*

Multnomah County Circuit Court
091172145; A144732

263 P3d 1096

Kristin Winnie Eaton and Yates, Matthews & Eaton, P.C., filed the briefs for appellant.

Emily S. Cohen filed the brief for respondent.

Before Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Respondent appeals from a restraining order that the trial court entered under the Family Abuse and Prevention Act (FAPA), ORS 107.700 to 107.735. Respondent asserts that there was insufficient evidence to establish that petitioner was a victim of abuse. In particular, respondent challenges the trial court's determination under ORS 107.705(1)(b) that respondent placed petitioner in fear of imminent bodily injury. Respondent also argues that there was insufficient evidence to show that petitioner was in imminent danger of further abuse and that he is a credible threat to petitioner's safety. ORS 107.718. Respondent asks us to exercise our discretion to review *de novo*. *See* ORS 19.415. Because respondent has failed to advance a compelling reason for us to do so, we decline his request. *See State v. S. T. S.*, 236 Or App 646, 654-55, 238 P3d 53 (2010). We affirm.

Without belaboring the facts in unnecessary detail, we review for "any evidence" to support the trial court's decision. *Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010). Petitioner and respondent had an intimate relationship that petitioner ultimately broke off in August 2009. Beginning in September 2009, respondent was frequently seen in petitioner's neighborhood, despite the fact that he lives more than six miles away. On September 2, about a week after their break up, petitioner discovered a flat tire on her car at 5:45 a.m. She then observed respondent driving by her house an hour later while she was changing the tire. On September 19, petitioner discovered that her car had been "keyed." Petitioner confronted respondent about the incident, and he claimed that he had been out of town when the vandalism occurred, staying at a hotel where petitioner and respondent had once stayed. The hotel, however, had no record of respondent being there at that time.

During the fall of 2009, petitioner's next-door neighbor saw respondent walking by the neighbor's home so often that he thought respondent lived in the neighborhood. On several occasions during the same period, the neighbor's girlfriend observed respondent coming out from between petitioner's house and the neighbor's house; in one instance,

respondent turned "into the bushes." Also during that period, according to petitioner, she received voice and text messages from respondent stating, "that I wasn't a compassionate person; trust me, I can be just like you. I'll be seeing you soon." Petitioner found respondent's statements to be very unsettling, because she previously had told him that she did not want to see him or talk to him. Petitioner installed a padlock on the gate to her backyard after the neighbor told her that he had seen someone at the back gate. Petitioner's bedroom window is "right at the backyard," and there is an entrance to the living area of the house from the backyard. According to one of petitioner's friends, as a result of respondent's lurking about, petitioner "was scared and fearful of him, and it was growing worse." In late October, respondent left a telephone message for petitioner that his brother had died. On November 5, petitioner discovered another flat tire on her car while it was parked on the street.

On November 23, petitioner's neighbor saw an intruder in petitioner's backyard at about 2:00 a.m. The neighbor rang petitioner's doorbell to report the intrusion. Petitioner and the neighbor then called the police. The police responded, and they apprehended respondent in petitioner's backyard. Petitioner was so distraught when she saw respondent that it made the neighbor "scared." Respondent testified that

> "I got drunk that night. I have no excuse for that. I got drunk, had somebody drive me to the area, because I was too intoxicated to drive. I couldn't even tell you who the guy was. That's where I was. And he dropped me off, and I was going to put this letter on her back door, and then [here] come the police. And that was it."

When petitioner went into her backyard, she discovered the padlock was missing from her gate. The next morning, she found a small table in front of the backyard door to her house, and a light bulb had been loosened so that the outside light did not work. Petitioner then decided to apply for the instant restraining order. When a police officer asked petitioner to recount the events of November 23 about one month later, petitioner was crying, shaking, and visibly upset.

Petitioner obtained an *ex parte* FAPA order on November 23. Thereafter, respondent chased her in his car at such a high speed that petitioner was in danger. At that point, petitioner was so frightened for her life that she moved from her home to stay with a friend. In addition, on a different occasion, petitioner's neighbor and his girlfriend saw respondent coming out from the area between his house and petitioner's house. Respondent also left a threatening message on the voicemail of one of petitioner's friends, telling her that she was "next."

Respondent requested an evidentiary hearing on the *ex parte* FAPA restraining order, and the matter was heard on January 11, 2010. At the conclusion of the hearing, the trial court found:

"Looking at the totality of the facts, it isn't an allegation there was actual physical contact. The allegation was fear. And I'm sorry, but the conduct of having someone in someone's backyard uninvited in the middle of the night—and the evidence is uncontroverted he's [been] there more than once—is certainly sufficient for a stalking order. That issue isn't before me. The issue is this order, and the court finds, yes, it is. This order remains in effect."

On appeal, respondent readily acknowledges that his conduct was "creepy" and that petitioner was afraid of him. However, respondent disputes that the evidence sufficed to show, as required by ORS 107.705(1)(b), that petitioner had been placed "in fear of imminent bodily injury," or that, as required by ORS 107.718(1), petitioner was "in imminent danger of further abuse" from respondent. We disagree.

To warrant the issuance of a FAPA restraining order, the petitioner must show that

"[(1) the petitioner] has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that [(2)] there is an imminent danger of further abuse to the petitioner and that [(3)] the respondent represents a credible threat to the physical safety of the petitioner * * *."

*Fielder and Fielder*, 211 Or App 688, 693, 157 P3d 220 (2007) (citing ORS 107.718(1)). The analysis of ORS 107.718(1) begins with the question whether petitioner is a "victim of

abuse."[1] Petitioner alleged that she is a victim of abuse because respondent placed her in fear of imminent bodily injury. Establishing "fear of imminent bodily injury" does not require overt threats or physical violence. *Fielder*, 211 Or App at 693-95. For example, behavior that is "erratic, intrusive, volatile and persistent" conduct combined with an "obsess[ion] with the idea of killing another person" may place a petitioner in "fear of imminent serious bodily injury and in immediate danger of further abuse." *Lefebvre v. Lefebvre*, 165 Or App 297, 301-02, 996 P2d 518 (2000). However, even if a petitioner makes subjective assertions of fear, a FAPA restraining order will not be upheld when there is insufficient evidence that the alleged conduct creates an imminent danger of further abuse and a credible threat to the physical safety of the petitioner. *Roshto v. McVein*, 207 Or App 700, 704-05, 143 P3d 241 (2006). To determine whether "fear of imminent bodily injury" has been established requires an examination of the totality of the circumstances. *Fielder*, 211 Or App at 694.

In this case, there was evidence to support the trial court's implicit determination that, as she had asserted, petitioner was a victim of abuse because respondent had—at least recklessly—placed her in fear of imminent bodily injury. His multiple uninvited trespasses onto her property, coupled with his veiled threats in his voicemail and text messages, and her reasonable belief that, in light of his presence in the vicinity when her car had been vandalized, he had committed those acts, had already placed petitioner in fear for her safety before November 23, 2009. The evidence that she discovered respondent's presence in her backyard late

---

[1] "Abuse" under ORS 107.705(1) is defined, in part, as

"* * * the occurrence of one or more of the following acts between family or household members:

"(a) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b) Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.

"(c) Causing another to engage in involuntary sexual relations by force or threat of force."

Respondent acknowledges that petitioner was a family or household member for purposes of the statute.

that night, found that he likely had removed the padlock from her gate to gain entry, learned the next morning that he likely had unscrewed a light bulb near her back door while lurking there and, as a consequence was extremely afraid for her safety, was sufficient in the totality of the circumstances to establish that petitioner was in fear of imminent bodily injury.

Next, under ORS 107.718(1), petitioner was required to show that she was in imminent danger of further abuse. An overt threat of physical violence is not required to support such a finding. *See Lefebvre*, 165 Or App at 301. To make such a finding, the trial court may consider testimony regarding events outside the 180-day window to satisfy ORS 107.718(1). *Id.* at 303. The record before us reflects a continuing pattern of respondent's chilling behavior. Respondent's conduct in chasing petitioner in his car, his persistent trespasses on her property, and his threat to her friend even after the *ex parte* restraining order was issued amply demonstrate a dangerous obsession that belies his protests of aberrant intoxication and remorse. There was sufficient evidence to establish that petitioner is in imminent danger of further abuse by respondent; the same evidence showed that respondent represents a credible threat to petitioner's physical safety.

Affirmed.