Submitted July 1, reversed August 31, 2016

Karen Lee DALEY,
*Petitioner-Respondent,*

*v.*

Daniel J. DALEY,
*Respondent-Appellant.*

Josephine County Circuit Court
15PO01945; A160411

380 P3d 1226

Pat Wolke, Judge.

George W. Kelly filed the briefs for appellant.

Clayton C. Patrick filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**SERCOMBE, P. J.**

Respondent appeals an order continuing a restraining order that petitioner obtained against him under the Family Abuse Prevention Act (FAPA). ORS 107.700 - 107.735. Respondent contends that petitioner failed to present sufficient evidence to support continuation of the order and that one of the factual findings underlying the order was unsupported by any evidence in the record. As explained below, on review to determine "whether any evidence establishes the requisites for the issuance of the FAPA restraining order by the trial court," *Patton v. Patton*, 278 Or App 720, 721, 377 P3d 657 (2016), we reverse.[1]

Petitioner and respondent have been married since 2005, and have one child together. Petitioner has a brain tumor and, as a result, sometimes experiences seizures, especially when she is under stress. She takes prescription medication for the seizures as well as for anxiety and to help her sleep.

The parties moved to Oregon in June 2014. Before that time, they lived in Alaska. Petitioner testified that, while the parties lived in Alaska, on one occasion she locked herself and the parties' daughter in the bathroom because she was changing the child, who had been throwing up. Respondent insisted on coming into the bathroom and, when petitioner would not open the door, respondent threatened to kick the door in. Petitioner called her brother who, in turn, called the police. When they arrived, petitioner told them to go away and that respondent had not hit her. After that incident, respondent had petitioner sign a letter telling the brother who had called the police not to contact respondent or respondent's immediate family. Petitioner signed the letter because respondent framed it as a choice between keeping their family together or having contact with her brother.

Petitioner's drinking has long been a point of contention in the parties' marriage. Respondent believes that petitioner has a drinking problem and has repeatedly

---

[1] On appeal, respondent requests that we exercise our discretion to review the record *de novo*. *See* ORS 19.415(3)(b). However, because this is not an exceptional case, we decline to do so. *See* ORAP 5.40(8)(c).

expressed concerns about that problem and its effects on petitioner's ability to parent. Petitioner, on the other hand, agrees that she drinks and testified that, on a weekend evening, "I could drink five beers, I could drink nine beers." Between "like 5:00 and 11:00 at night when all [her] favorite shows were on," she might drink "two beers an hour for like seven hours." However, petitioner does not view herself as having a drinking problem. In the fall of 2014, petitioner (at respondent's insistence) entered into an alcohol treatment program. However, she did not complete that program.

On April 7, 2015, respondent told petitioner to give him her cell phone and, ultimately, to leave their house. According to respondent, he demanded the phone because petitioner's data usage had exceeded their plan allowance. As petitioner recounted the events of April 7, respondent

"demanded my phone from me, and I didn't know why. But as the morning went on he said, 'You're adding here, get out, give me your phone so you can't record me, because you're a little snake. You're an unappreciative little bitch, and you're not going to walk around this house and not talk to me. You've got to go. You're poison in this house, and you're worthless.['] He called me a little fucking cunt, and I should get a shopping cart, go down to the women's shelter. They'll feed me down there. He and [the parties' daughter] don't need *** me."

Furthermore, "he used his fingers. This is [the child] and daddy happy, happy, happy, and here's mommy falling off the cliff. 'Oh [no], oh well, goodbye mommy.'"[2] He also told her:

"'You got to go. You got to go, that door isn't shutting until you're on the other side of it. Come on, the heats—we're losing heat here. Hurry up, get your shit. Get you[r] shit and get out.' *** He said, 'You had your chance. Get out.'"

According to petitioner, respondent's voice was raised and he was close enough to her that she could smell his breath. In addition, petitioner stated that respondent had money

_____

[2] According to petitioner, she felt afraid because the family had been on a trip during the preceding spring break and respondent had wanted to "pull up on the side of the road, and make a snowman on these cliffs." She had not wanted to do so because she was afraid of heights and told him that she would not get out of the car.

and she felt threatened because he said that she would be poor and he would get custody of their daughter. According to petitioner, he told her:

"You ain't got a leg to stand on. You're done, you're—you're going to be poor, you're going to be living off the system. You ain't going to have nothing * * *."

As a result of that incident, petitioner left, picked up the parties' daughter, and then filed for the restraining order at issue. She and respondent have lived separately since that time.[3]

After reviewing the petition and holding a brief hearing, the court issued an *ex parte* FAPA order. Respondent requested a hearing and waived his right to have the matter heard within five days. After the conclusion of the hearing, which began in May 2015 and was continued in August and September 2015, the court made the following findings:

"Well, the first issue is whether or not abuse occurred, and I listened to the testimony. I've reviewed my notes, and the time I'm really focusing on is April 7. I think anything that happened apart from that really doesn't constitute abuse. I think there are angry exchanges between [respondent] and [petitioner] that she took as a threat. I don't think they really constitute—would put her, place her in fear of immediate bodily injury. So, I'm focusing on April 7.

"I am taking into account that [respondent's] testimony during the marriage that he never touched or hit, assaulted [petitioner]. So I'm taking that into account as to whether or not her fear is reasonable or not.

"So just focusing on April 7 I think that what has led up to April 7 is that there is a big disagreement in this marriage about [petitioner's] drinking which I think is a real problem. And many discussions about that, and [respondent] becoming more and more angry about it, and I think on April 7 he became angry enough, and raised his voice enough. She testified that he raised his voice, and raised his hand, so he was close to her face.

"So it's a close call, but I think that does—is a qualifying act of abuse that would place her in fear of imminent

---

[3] Petitioner also testified that, since the parties moved to Oregon, respondent had kept a "machete" and a baseball bat beside the bed.

bodily injury even given the fact that he may have had a legitimate reason to be angry even given the fact that he has no history of prior abuse.

"I think on that particular occasion he was angry enough, he raised his hand, he was close to her, and that I think is enough by a preponderance of the evidence to say that he placed her in fear of imminent bodily injury."

Based on those findings, the court continued the FAPA order.

On appeal, as noted, respondent contends that the trial court erred in continuing the FAPA order. He also asserts that, in continuing the order, the trial court relied on a finding—that respondent "raised his hand" during the April 7 incident—that is unsupported by any evidence in the record. Petitioner agrees that "there is no testimony to support this conclusion of the court." However, she argues that, even though respondent did not "raise his hand" at petitioner on April 7, there is evidence to support a finding that she was placed in imminent fear of bodily harm because of respondent's intentional or reckless actions.

Under ORS 107.718(1), to warrant the issuance of a FAPA restraining order, a petitioner must show, by a preponderance of the evidence, that the petitioner

"'[(1)] has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that [(2)] there is an imminent danger of further abuse to the petitioner and that [(3)] the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child * * *.'"

*Fielder v. Fielder*, 211 Or App 688, 693, 157 P3d 220 (2007) (quoting ORS 107.718(1); numbers bracketed in *Fielder*). "A petitioner must meet each of those requirements to obtain a FAPA restraining order." *Id.* Pursuant to ORS 107.705(1), abuse is defined as:

"(a) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b) Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.

"(c) Causing another to engage in involuntary sexual relations by force or threat of force."

"Thus, a person can commit 'abuse,' as defined by ORS 107.705(1), even if the person does not actually cause bodily injury. Abuse includes attempting to cause bodily injury, ORS 107.705(1)(a), and intentionally, knowingly, or recklessly placing another in fear of imminent bodily injury, ORS 107.705(1)(b)." *Maffey v. Muchka*, 244 Or App 308, 313, 261 P3d 26 (2011). Under the statute, "a FAPA restraining order will be upheld only if the evidence established that 'the alleged conduct create[d] an imminent danger of further abuse and a credible threat to the physical safety of the petitioner.'" *Hannemann v. Anderson*, 251 Or App 207, 213, 283 P3d 386 (2012) (quoting *Hubbell v. Sanders*, 245 Or App 321, 326, 263 P3d 1096 (2011) (brackets in *Hannemann*)). That is so "even if a person makes subjective assertions of fear." *Hubbell*, 245 Or App at 326.

Again, petitioner argues that, even given that respondent did not "raise[] his hand," there is sufficient evidence to support a determination that petitioner was reasonably placed in imminent fear of bodily harm on April 7. In other words, she contends that "the evidence clearly demonstrates that subsection (b) of 'abuse' was proven." Even assuming, for the sake of discussion, that petitioner is correct, she does not address the remaining two elements required for the issuance of a FAPA order: imminent danger of further abuse and a credible threat to the physical safety of the petitioner. In our view, the evidence, viewed objectively, *see Patton*, 278 Or App at 722, is legally insufficient to establish that respondent's conduct put petitioner at imminent risk of further abuse or credibly threatened her physical safety. The record in this case reflects that there was huge tension in the parties' relationship and that they had many arguments centering on petitioner's alcohol use. Respondent's increasing anger regarding the use of alcohol and its effect on the parties' daughter is reflected in the evidence, including his conduct on April 7. The record also demonstrates that respondent had problems with members of petitioner's family and that, during the marriage, respondent informed petitioner she would have to choose between a relationship with him and one with her brother. However, the evidence does not reflect a history of violence or threats (either explicit or implicit) of violence within the

relationship. Respondent's threats that petitioner would be left without any money, would be "living off the system," or would not have custody of their daughter do not relate to petitioner's physical safety. Nor was there any evidence of any abuse or concerns about abuse that occurred after April 7 and before the FAPA hearing.

Simply put, none of the evidence presented in this case is sufficient to support a determination that respondent's conduct put petitioner at imminent risk of further abuse or credibly threatened her physical safety. *Compare Hubbell*, 245 Or App at 326-27 (respondent's actions of trespassing on petitioner's property, chasing her in her car, leaving threatening voice and text messages, and vandalizing her car demonstrated a "dangerous obsession" with petitioner that adequately supported determinations that petitioner was in imminent danger of further abuse and that respondent posed a credible threat to her physical safety), and *Lefebvre v. Lefebvre*, 165 Or App 297, 301-02, 996 P2d 518 (2000) (behavior that was "erratic, intrusive, volatile and persistent" combined with an "obsess[ion] with the idea of killing another person" placed petitioner in imminent danger of further abuse), *with Patton*, 278 Or App at 721, 723-24 (evidence that respondent had threatened to smash petitioner's car and destroy petitioner's belongings and that, when petitioner had attempted to call the police, respondent had followed her, did not support a determination that respondent's conduct created an imminent danger of further abuse or a credible threat to petitioner's physical safety), and *Poulalion v. Lempea*, 251 Or App 656, 658-59, 284 P3d 1212 (2012) (after respondent had "squished" petitioner in a doorway, evidence that respondent owned weapons but never threatened petitioner with a weapon, and had gone to petitioner's home to remove items did not demonstrate that respondent posed an imminent danger of further abuse or a credible threat to petitioner's safety). *Cf. Valenti v. Ackley*, 261 Or App 491, 495, 326 P3d 604 (2014) (volatile and occasionally violent relationship did not demonstrate that former boyfriend posed imminent danger of further abuse or credible threat to petitioner's safety once the parties stopped cohabitating).

Because there is no evidence in the record to demonstrate that there was an imminent danger of further abuse

to petitioner or that respondent represented a credible threat to petitioner's physical safety, the trial court erred in continuing the FAPA restraining order.

Reversed.