DeVORE, J.
*136 Respondent challenges the legal sufficiency of the evidence offered to support the trial court's decision to continue a restraining order entered against him pursuant to the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.732. Respondent argues that (1) because his statement in a telephone call should be understood only as an expression of regret, it was not evidence of abuse, and (2) because he was jailed on the day the petition was filed, petitioner faced neither an imminent danger nor credible threat of further abuse. We conclude that a factfinder could find respondent's statement, seen in light of the parties' circumstances, placed petitioner in fear of imminent serious bodily injury. Respondent's latter argument was not preserved. We affirm.
Respondent does not ask that we undertake review de novo so as to decide the facts anew on the record, and we would decline to do so because this is not an exceptional case. See ORAP 5.40(8) (court will exercise its discretion to try the case anew on the record only in exceptional cases). If supported by sufficient evidence, we must accept the trial court's express findings. We presume that the trial court's implicit factual findings were consistent with its order in petitioner's favor. Lefebvre v. Lefebvre , 165 Or. App. 297, 302 n. 2, 996 P.2d 518 (2000). We are bound by implicit findings of the trial court if evidence in the record supports them. Hannemann v. Anderson , 251 Or. App. 207, 208, 283 P.3d 386 (2012). That standard of review constrains our view of the material facts and explains why we see them differently than does this respondent.
Petitioner and respondent married in 2006 and had four children. They experienced a "very rocky relationship." In 2007, respondent was convicted of a charge involving domestic abuse against petitioner. Petitioner testified to respondent being "unstable" and "an ongoing violent person." In 2010, according to petitioner, respondent did not want her to go out on Halloween and, in an argument, threw her down on the floor. In 2011, according to petitioner's mother, respondent called her at work, while very stressed out, and admitted to pushing petitioner into, or pinning petitioner *137 against, the wall. Petitioner said that respondent threatened to harm himself, and, in 2012, she saved him after he hanged himself from the ceiling.
The parties separated in February 2015. Petitioner testified that respondent would not give up on getting back together. As evidence, she offered Facebook text messages beginning in 2015, including a suicide note that he wrote, photographed, and sent to petitioner's sister.[1] In one message, respondent wrote to petitioner, "You and any dude have another thing coming * * *. Them I'll just fuck everyone up you bring around watch." Seemingly in reference to another man, respondent wrote, "I'll bring the firey rains of hell down upon that mother fucker." In July 2015, respondent wrote, "Please open up and talk to me please. I'm not going to hurt you any more physical [sic ] verbally or otherwise. I love and miss you so much." Sometime in 2016, respondent threatened to harm himself if petitioner did not agree to resume their relationship.
On January 16, 2017, within the 180 days preceding the petition for a restraining order, the parties had an argument at a time when petitioner expected respondent to return *195 their children. He told her to call him. In that call, she testified, "He said he should have gotten rid of me when he had the chance." According to petitioner, respondent said he was taking the kids out of state and changing their names. Petitioner understood respondent's statement as a present threat because "[h]e's made threats like that before, where he has farmland, and he has people with pigs who can eat my whole body, no one will *** ever be able to find me."[2]
As a consequence, petitioner said, "I am scared. I am fearful of him." She said "it's been a long history." As an example, she recalled that she had left respondent in the middle of the night because she was afraid to get out of the relationship. Most recently, she testified, she had been more *138 fearful of retaliation because she had reported respondent's location to police so that they could serve an arrest warrant on an unrelated charge. The parties had been separated for about two years by the time of the hearing.
In its findings, the trial court observed that this is a "unique situation" insofar as most of the testimony is about conduct "long ago." Nevertheless, the court noted, there was a conviction for domestic violence and "domestic violence has been going on through the years." The court recognized that the central issue was whether the statement made in the January 2017 telephone call was a threat. The court considered respondent's Facebook messages, referring to them as "about the vilest, most vile, text messages that I think I have ever read in all the time I've been here." The court found that respondent had an obsession with petitioner and it was "clearly" of such a nature, the court said, that "it scares me."
Given the history of violence and the sequence of messages, the court concluded that the January statement was sufficient conduct to constitute abuse. The court entered an order that continued the initial order, which had found that petitioner had been abused within the last 180 days, that respondent presented a credible threat to the safety of petitioner, and that there was imminent danger of further abuse. Among other things, the order restrained respondent from intimidating, molesting, interfering with or menacing petitioner.
On appeal, respondent assigns two errors. First, he argues that the single telephone call could not provide sufficient evidence to constitute "abuse" within the meaning of ORS 107.705 and ORS 107.718. Specifically, he contends that none of the accounts of physical abuse occurred within 180 days of the petition and that the single statement in the January 2017 telephone call, which he denied, was merely an expression of regret that he had not done something in the past and could not be sufficient evidence of a present threat. Second, respondent argues that, because he was jailed on the day petitioner filed her petition, he did not present an "imminent danger" of further abuse within the meaning of ORS 107.718. Petitioner has not appeared on appeal.
*139 We begin with respondent's second assignment because we can do so summarily. Appellate rule provides that no matter claimed as error will be considered on appeal unless it was preserved in the lower court and the opening brief sets forth the attendant ruling and challenge. ORAP 5.45(1), (4). Respondent did neither. Respondent's brief fails to show where he preserved his challenge on the issue of "imminent danger" in the lower court. The record further shows that, although respondent raised the issue initially, he withdrew it. During his closing argument to the court, respondent argued, first, that the telephone call could not be found to be a threat, and his second issue "would be imminency" or a lack of imminent danger because respondent was in jail at the moment. The trial court interrupted, asking, "I know that, that's in the evidence put before me?" Respondent replied, "Certainly, Your Honor, I apologize. I withdraw that last part. But again, we certainly feel that there is no actual threat of harm[.]" (Emphasis added.) Respondent did not preserve the alleged *196 error for review because he withdrew the issue from the lower court's consideration upon being questioned during the hearing. See State v. Clark , 256 Or. App. 428, 431-32, 300 P.3d 281 (2013) (defense counsel failed to preserve an issue by withdrawing his request for a clarifying instruction in colloquy).
Respondent's first assignment of error requires discussion of the FAPA statute and its application. Under ORS 107.718(1), a court may issue a restraining order upon a showing that
"the petitioner has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that there is an imminent danger of further abuse to the petitioner and that the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child[.]"
Under ORS 107.705(1)(b), "abuse," among other things, means an occurrence, between family members, of "[i]ntentionally, knowingly or recklessly placing another in fear of imminent bodily injury." (Emphasis added.)
Drawing from that definition, our case law has recognized that "[a]n overt threat is not required in order to *140 authorize the issuance of an abuse prevention restraining order." Lefebvre , 165 Or. App. at 301, 996 P.2d 518. Despite the lack of an explicit threat, the court may look to the totality of the circumstances to determine that a respondent has, with the requisite mental state, placed a petitioner in fear of imminent serious bodily injury and in immediate danger of further abuse. Id . at 302, 996 P.2d 518. That determination includes considering "events outside FAPA's jurisdictional window for the purpose of establishing the imminent danger of further abuse." Id . at 303, 996 P.2d 518 ; see also Fielder v. Fielder , 211 Or. App. 688, 695, 157 P.3d 220 (2007) ("[A] trial court may consider testimony regarding events outside the 180-day window to satisfy ORS 107.718(1).").
In Lefebvre , we rejected a respondent's argument that an event involving his obsession with another person eight and one-half years before was too remote to be considered as evidence in support of a FAPA order. Lefebvre , 165 Or. App. at 303, 996 P.2d 518. In that case, there was no explicit threat, and there was no history of physical abuse. Id. at 300-01, 996 P.2d 518. But the respondent's conduct was erratic, intrusive, volatile, and persistent. Id. at 301, 996 P.2d 518. He engaged in "increasingly obsessive behavior." Id. at 299, 996 P.2d 518. He screamed obscenities in the petitioner's face, made numerous hang-up phone calls, rummaged through her possessions, and made a late-night call describing her sleeping clothes, suggesting he had been lurking nearby. Id . Combining past and recent events, we found that the totality of circumstances justified a restraining order. Id . at 303, 996 P.2d 518.
In this case, unlike Lefebvre , there is a prior conviction involving domestic abuse, there is a long history in which respondent was, at times, physically violent, and there is a troubling statement. Like the respondent in Lefebvre , respondent was obsessed with petitioner, as evidenced by petitioner's testimony and respondent's messages. Respondent's suicide attempt and fatalistic messages provided the trial court with at least some evidence in support of petitioner's description of an "unstable" and "an ongoing violent person." When respondent's recent statement is evaluated in the totality of the circumstances, past and present, the trial court had sufficient evidence to conclude that *141 respondent's statement intentionally, knowingly, or recklessly placed petitioner in fear of imminent bodily injury. See ORS 107.705(1)(b) (defining "abuse" in those terms). Accordingly, the statement provided the trial court with sufficient evidence of abuse, occurring within the 180-day period of ORS 107.718(1). The trial court did not err in continuing the abuse prevention order.
Affirmed.

One of respondent's Facebook messages referred to when he hanged himself.

On cross-examination, petitioner acknowledged that that statement had been made some years earlier when the parties lived in Arizona, but on direct examination, she also said, "[e]very fight I ever hear he has made that threat to me."