Submitted June 7, affirmed October 9, 2019

P. K. W.,
*Petitioner-Respondent,*

*v.*

David Edward STEAGALL,
*Respondent-Appellant.*

Linn County Circuit Court
18PO05430; A168943

452 P3d 1059

Respondent appeals from an order that continued an *ex parte* restraining order following a contested hearing. Respondent argues that the trial court erred by continuing the restraining order because there was insufficient evidence in the record to support the restraining order as required by ORS 107.710(1). *Held*: The trial court did not err. The record contained sufficient evidence to support the trial court's findings and conclusions of law.

Affirmed.

David E. Delsman, Judge.

Tyler Reid filed the brief for appellant.

Chelsea D. Armstrong and Armstrong Chai, LLC, filed the brief for respondent.

Before Hadlock, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

## MOONEY, J.

This is a Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735, restraining order case between the parties to a six-year intimate relationship. Respondent appeals from an order that continued an *ex parte* restraining order following a contested hearing. Respondent argues that the trial court erred by continuing the restraining order because there was insufficient evidence in the record to support the restraining order as required by ORS 107.710(1). We disagree and, therefore, affirm.

Prior to stating the facts of this case, we briefly set out the applicable legal standards and process for obtaining a FAPA restraining order. When a person has been abused within the previous 180 days, he or she may petition the circuit court for a restraining order. ORS 107.710(1). After receiving the petition, the court shall hold an *ex parte* hearing and grant the restraining order upon a showing that (1) the petitioner has been a victim of abuse within the 180-day time period immediately before the petition for the restraining order is filed, (2) the petitioner is in imminent danger of further abuse, and (3) the respondent represents a credible threat to the petitioner's physical safety. ORS 107.718(1). If the court issues the *ex parte* restraining order, the respondent may request a hearing to challenge the restraining order. ORS 107.718(10). The burden of proof at both the *ex parte* and the contested hearing is by a preponderance of the evidence and is carried by the petitioner. ORS 107.718(1); ORS 107.710(2).[1]

---

[1] All references to FAPA statutes in this opinion are to the statutes in effect in 2018. In 2019, the legislature enacted legislation that amended ORS 107.716 regarding the findings a court must make to continue a restraining order at a contested hearing. Or Laws 2019, ch 144, § 1. ORS 107.716(3) now provides, in part:

"In a hearing held pursuant to subsection (1) or (2) of this section:

"(a) The court may continue any order issued under ORS 107.718 if the court finds that:

"(A) Abuse has occurred within the period specified in ORS 107.710(1);

"(B) The petitioner reasonably fears for the petitioner's physical safety; and

"(C) The respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child."

On appeal, we review the trial court's legal conclusions for legal error.[2] *Kargol v. Kargol*, 295 Or App 529, 530, 435 P3d 814 (2019). We are bound by the trial court's factual findings—both those that are explicit and those that are necessarily implied by its rulings—if any evidence in the record supports them. *Hannemann v. Anderson*, 251 Or App 207, 208, 283 P3d 386 (2012). We therefore describe the facts consistent with that standard.

The following facts are taken from the evidence admitted at the contested hearing. Petitioner and respondent began their romantic relationship sometime in 2012. For the first three years, they lived in separate residences and then, in December 2015, petitioner and her son, A, moved into respondent's home, where he resided with his children, D, J, and K. The parties worked on some "combined parenting skills," but generally each was responsible for disciplining his or her own child(ren). The dynamics of that arrangement became complicated and the parties' relationship deteriorated. Their interactions became volatile; respondent began tracking petitioner's whereabouts with a GPS device, and he frequently boasted about physical fights he had been in and won. Respondent required petitioner to turn her paychecks over to him for deposit into their joint account. Approximately one week before the June 3 incident (described below), he removed her name from the account so that she no longer had access to her money.

In January 2018, an incident occurred during a family trip to the store in respondent's truck. Respondent went into the store for bread and the others waited in the truck. Respondent's son, J, pushed K down in the back seat where they were sitting. Petitioner, seated in the front passenger seat, attempted to intervene and defuse the situation by flicking J in the mouth with her finger. J resisted

The new provisions do not apply to this case; they apply to orders issued on or after May 22, 2019, that arise from abuse occurring before, on, or after that date, the effective date of the legislation.

[2] Although we have discretion to review this case *de novo*, ORS 19.415(3)(b), we decline to do so, because neither party requests *de novo* review and we do not view this as an exceptional case. *See* ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases.").

by blocking those attempts and the situation escalated. While in the store, respondent noticed a commotion out in the truck, at which point he returned, opened the back door, and hit petitioner several times on both sides of her head.

The incident that prompted petitioner to file her restraining order petition occurred on June 3, 2018. It is undisputed that petitioner and respondent began that day with an intimate encounter. Petitioner testified that the intimate encounter was consensual but that, after it ended, respondent penetrated her rectum with his finger several times after she told him not to do so. Respondent disputes that petitioner told him not to do so and testified further that petitioner had said that "that's how she liked it."

They then attended church services later that morning. While the parties were still in respondent's truck after returning from church, they argued about money, with respondent telling petitioner that she needed to turn her paychecks over to him. The argument was heated, and petitioner got out of the truck and went into the house, specifically to A and D's shared bedroom. Respondent followed her, making loud statements about petitioner's experiences with other men while her son was close enough to hear. Petitioner began to videotape respondent with her phone, and she told respondent that his comments were criminal because her son was present to hear them. Respondent, further angered by this, knocked her down onto the bed and took her phone. As petitioner jumped up in an effort to retrieve her phone, respondent threw her into an elliptical exercise machine, causing pain and leaving her bruised. Petitioner chased respondent in an unsuccessful attempt to get her phone back. She and her son, A, left the house and sought the assistance of the mother of one of A's friends. Petitioner filed her petition for a restraining order two days later. The restraining order was granted *ex parte* and respondent requested a contested hearing to challenge it.

At the contested hearing, petitioner testified that, during the eight weeks between issuance of the *ex parte* restraining order and the contested hearing, respondent violated the restraining order more than once. Each violation involved respondent entering the prohibited area around

petitioner by driving slowly past her place of employment and also by driving slowly past petitioner as she was leaving church. At the time of the contested hearing, respondent had a pending charge of contempt against him arising out of one of those events. The contempt matter had not been resolved at the time of the contested hearing in the matter before us.

The trial court made oral findings and announced its ruling following presentation of the evidence. While doing so, it called this a "difficult case." The court found the testimony of petitioner and her son, A, to be credible with respect to the description of what happened "in the bedroom" on June 3. It also found their testimony credible on the question of the abuse having continued "past that initial aggression," and it commented that "some of [that] was captured with a cell phone video of the other child." The court concluded that respondent abused petitioner on June 3, 2018, within the meaning of ORS 107.705(1).

The trial court then found that whether there existed a "threat of further future abuse" was a "closer question." The court "suspect[ed]" that, because the parties were no longer living together, the risk of further abuse was reduced. Nevertheless, the court stated that the evidence of "repeated behavior" was important to it in discerning whether there was an imminent threat of further abuse. It found that there was such an imminent threat and continued the restraining order.

On appeal, respondent argues that there was insufficient evidence in the record to support continuance of the restraining order. As mentioned above, petitioner was required to establish, by a preponderance of the evidence, that (1) she had been a victim of abuse within 180 days of filing the petition, (2) she was in imminent danger of further abuse, and (3) respondent represented a credible threat to her physical safety. ORS 107.718(1); ORS 107.710(2).[3] We focus on the second two elements and, in particular, the

---

[3] Respondent does not challenge the trial court's finding that he abused petitioner within the preceding 180 days. And although the court's oral ruling expressly addressed the June 3 incident, the January incident also fell within 180 days of filing and was also the subject of significant testimony and argument at the contested hearing.

question of imminent danger of further abuse.[4] The court's task was to determine whether respondent continued to be a credible threat to petitioner's physical safety and whether she was in imminent danger of further abuse from respondent. At its core, that task required the court to forecast the future by evaluating past conduct and discerning the likelihood that abuse would occur again: a calculation laden with the peril of uncertainty that is intrinsically human. As the court made that calculation and reached its decision, it assessed witness credibility and evaluated the reliability of all the evidence presented. The court made factual findings and necessarily drew inferences from those findings as it calculated the likelihood of further abuse. So long as those findings were supported by the record and the derivative inferences from those findings were reasonable, we are bound by them. *Hannemann*, 251 Or App at 208.

The trial court here made its credibility and reliability determinations as a key part of the evaluative process. It was well-situated to make those calls because the trial judge was present in the courtroom where the parties and their witnesses testified. And, when it acknowledged that the further abuse issues presented a "closer" question than that of past abuse, it demonstrated that it was actively engaged in assessing and weighing the evidence.

The trial court heard varying descriptions of the January and June incidents as well as of the post-restraining order violations and resolved those through its assessment of the testimony. In the end, the court made and explained its findings and rendered its ruling continuing the restraining order. While another judge might have assessed the evidence differently, we are bound by this trial court's factual findings and derivative inferences because there is evidence in the record to support the findings that it made and the inferences that it drew. *Id.*

---

[4] The focus of the trial court's inquiry after finding that abuse had occurred was on the question of whether petitioner was at imminent risk of further abuse. The parties likewise focused on that question and did not separately address whether respondent was a credible threat to petitioner's physical safety. The two elements are closely related, and we infer from the court's express finding that petitioner was in imminent danger of further abuse from respondent that it also found the facts necessary to support its determination that respondent posed a credible threat to petitioner's physical safety.

A review of appellate court FAPA opinions spanning the last several years reflects that the hearings underlying these cases are often highly emotional and hostile. More importantly, those cases reflect the very fact-specific character of the trial court's task in a FAPA hearing. A party can undoubtedly distinguish the facts of his or her case from the facts of any given published opinion. But, the range of factual scenarios covered by those opinions helps set parameters for the trial court as it decides each new FAPA case that comes before it.

Our recent opinion in *Buell v. Buell*, 296 Or App 380, 438 P3d 465, *rev allowed*, 365 Or 369 (2019), reversed a judgment granting the petitioner a FAPA restraining order, concluding that, on the facts of that case, there was insufficient evidence to establish that the respondent posed an imminent danger of further abuse to the petitioner. In reaching that conclusion, we relied on other similar, as well as contrasting, cases. We explained that, in restraining order cases, it is often "significant" that the relationship between the parties had changed and that the volatility that marked those relationships ended when the parties stopped living together. *Id.* at 385. We distinguished the facts of the *Buell* case from those in *Hubbell v. Sanders*, 245 Or App 321, 263 P3d 1096 (2011), which explained that it is appropriate to continue FAPA restraining orders when there is evidence of post-separation events that established a continuing threat to the petitioner's safety. *Buell*, 296 Or App at 388. In *Hubbell*, the record demonstrated that there was sufficient evidence when the respondent's conduct, after the *ex parte* FAPA restraining order was issued, included violations of that restraining order prior to the contested hearing.

The facts of this case are more similar to *Hubbell*. In addition to the abuse that occurred during the 180-day time frame on which FAPA requires us to focus, there was evidence that respondent had also violated the *ex parte* restraining order on two occasions in the short time before the contested hearing and after the parties separated. Contempt charges were pending at the time of the contested hearing. Based on that evidence, the trial court found that respondent had engaged in a pattern of abuse toward petitioner and it inferred that respondent presented

an imminent threat of further abuse. We accept the trial court's factual findings because they are supported by the record and we accept the inferences it drew from those facts because they are reasonable. On this record, the trial court did not err.

Affirmed.