Argued and submitted January 13; decision of Court of Appeals reversed, case remanded to Court of Appeals for further proceedings June 18, 2020

M. A. B.,
*Petitioner on Review,*

*v.*

Anthony Nicholis BUELL,
*Respondent on Review.*

(CC 17PO09823) (CA A166273) (SC S066752)

466 P3d 949

Petitioner sought a protective order under the Family Abuse Prevention Act (FAPA) against respondent, her husband of three years. During their marriage, respondent twice raped petitioner and threatened to kill her if she left him. Not long after the threat, petitioner took their child, separated from respondent, and filed for marriage dissolution. During their interactions after separation, respondent was erratic and hostile, including yelling expletives at petitioner during a mediation. In concluding that petitioner was entitled to a FAPA protective order, the trial court determined that respondent presented "an imminent danger of further abuse" to petitioner. ORS 107.718(1). On appeal, the Court of Appeals reversed the trial court's order after holding that the evidence was insufficient to show that petitioner was in imminent danger of further abuse from respondent. *Held*: (1) The term "imminent danger of further abuse" requires a court to consider whether potential future abuse would occur in the near future; (2) whether a respondent presents an imminent danger of further abuse is subject to the totality of the circumstances, including whether the parties' separation had reduced the danger to the petitioner; (3) the record is sufficient to support the trial court's conclusion that respondent presented an "imminent danger of further abuse" to petitioner.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

En Banc

On review from the Court of Appeals.*

Emily Rena-Dozier, Legal Aid Services of Oregon, Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Caleb Mammen, Oregon Law Center, Hillsboro.

George W. Kelly, Eugene, argued the cause and filed the brief for respondent on review.

_____

* On appeal from Washington County Circuit Court, Kirsten E. Thompson, Judge. 296 Or App 380, 438 P3d 465 (2019).

Kelsey Benedick, Larkins Vacura Kayser LLP, Portland, filed the brief for *amicus curiae* Oregon Attorney General's Sexual Assault Task Force. Also on the brief was John C. Rake.

Sarah E. Feldman, Forum Law Group, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Kathryn Moakley, Domestic Violence Clinic, Eugene, filed the brief for *amici curiae* Oregon Coalition Against Domestic and Sexual Violence, National Crime Victim Law Institute, and Oregon Crime Victims Law Center.

NELSON, J.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

**NELSON, J.**

Under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735, a petitioner may obtain a protective order by establishing, among other things, an "imminent danger of further abuse" by the respondent. ORS 107.718(1). In this case, the trial court concluded that petitioner had met that standard, but the Court of Appeals disagreed. *Buell v. Buell*, 296 Or App 380, 438 P3d 465 (2019). Petitioner contends that the Court of Appeals erred. For the reasons stated below, we reverse the Court of Appeals decision.

## I.  BACKGROUND

A court may issue a FAPA protective order when a petitioner establishes, by a preponderance of the evidence, that (1) the petitioner "has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition"; (2) "that there is an imminent danger of further abuse to the petitioner"; and (3) "that the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child." ORS 107.718(1). "Abuse" is defined as "the occurrence of one or more of the following acts between family or household members:

"(a)  Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b)  Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.

"(c)  Causing another to engage in involuntary sexual relations by force or threat of force."

ORS 107.705(1). If the court issues a protective order, then the respondent may request a hearing to contest any relief granted. ORS 107.718(10). At the hearing, the court may cancel or change the protective order or may continue the order as it was issued. ORS 107.716(3) (2017).[1]

---

[1]  In 2019, the legislature amended ORS 107.716(3). Or Laws 2019, ch 144, § 1. That provision now states:

"The court may continue any order issued under ORS 107.718 if the court finds that: (A) Abuse has occurred within the period specified in ORS 107.710 (1); (B) The petitioner reasonably fears for the petitioner's physical safety; and

Petitioner applied for a FAPA protective order against respondent on October 9, 2017. The court issued an *ex parte* FAPA restraining order the same day. Respondent requested a hearing to contest the restraining order. The hearing was held on October 20, 2017. The testimony and evidence provided at that hearing comprise the record in this case. The Court of Appeals detailed the historical facts with due deference to the trial court's findings. *Buell*, 296 Or App at 381-85. We review the facts here only in summary.

Respondent and petitioner were married in 2014. Together, they have a son, J, who was born in 2015. During the marriage, respondent suffered from depression, for which he took medication. He sometimes also drank to excess. Petitioner testified that respondent raped her twice: once in March 2017 and once in May 2017. The incident in May included respondent dragging petitioner away from J while petitioner was breast feeding. In June 2017, petitioner expressed her unhappiness with the marriage. Respondent replied that, if petitioner left or divorced him, he would kill her and take J.

In July 2017, petitioner took J, moved in with her parents, and filed for dissolution. After the separation, respondent made frequent attempts to contact petitioner by phone, email, and text message. The messages were erratic, including expressions of love, angry demands, and attacks on petitioner's family. Respondent once came to petitioner's parent's home unannounced, but no one answered the door. There was no evidence of other attempts by respondent to make face-to-face contact with petitioner outside of pre-arranged meetings. At those prearranged meetings, however, respondent regularly exhibited anger toward petitioner. At meetings to transfer J from one parent to the other, respondent would sometimes drive around the block to find petitioner's car, and then drive slowly by with an "angry, rage-filled stare" at petitioner and whoever was with her.

---

(C) The respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child."

ORS 107.716(3)(a) (2019). The events in this case took place before that legislative change.

The event that immediately preceded petitioner seeking the protective order occurred on October 5, 2017, when petitioner and respondent met with a mediator to discuss custody and parenting-time issues. Toward the beginning of the mediation, respondent stared intensely at petitioner for a long time and did not respond when the mediator asked him a question. The mediator felt like the stare was "meant to communicate extreme anger and rage" and asked respondent to stop staring, which he did. Later, when petitioner understood a statement by respondent as an admission that his parenting time should be super-vised, respondent became "very upset and angry," and he said "fuck you" three times while again staring intensely at petitioner.

The mediator asked respondent to leave the room and then, outside the room, asked whether he would be able to calm down enough to continue the mediation. Respondent said that he could not and would like to leave. After respon-dent left, the mediator spoke with petitioner, who was crying and shaking. The mediator suggested that petitioner speak with somebody at a domestic violence resource center and provided her with an escort to her car.

Following the October 20 hearing, the trial court continued the protective order in its entirety. The trial court made brief express findings, noting that petitioner was credible in her testimony about respondent's prior acts of involuntary sexual relations and his threat to kill her and take J. The trial court also characterized respondent's text messages and conduct at the mediation as "incidents of intimidation." The trial court found respondent's denials not credible.

On appeal, respondent conceded that the trial court's findings were sufficient to establish that he had abused petitioner within 180 days of petitioner seeking the protective order. Respondent argued, however, that the evi-dence was insufficient to establish the two other elements: that petitioner was in imminent danger of further abuse from respondent and that respondent presented a credible threat to petitioner's physical safety.

The Court of Appeals agreed with respondent that the evidence was insufficient to show that petitioner was in imminent danger of further abuse from respondent. The court, as a result, reversed the trial court's order without considering whether respondent represented a credible threat to petitioner's physical safety. *Buell*, 296 Or App at 385.

The court made several observations in assessing the sufficiency of the evidence that petitioner presented. As an initial matter, the court noted that petitioner's most serious allegations concerned abuse that occurred while petitioner and respondent were still living together and that, at the time petitioner applied for the protective order, they were no longer living together. The court stated, "In those circumstances, even when the relationship was abusive and volatile when the parties lived together, that past history may—at least in some circumstances—not be sufficient to demonstrate that the petitioner remains in imminent danger of being abused." *Id*. According to the court, the evidence of abuse that occurred while the parties lived together needed to be considered along with "the evidence of the parties' interactions leading up to and following their separation." *Id*. at 388.

The court then examined respondent's conduct prior to the separation in the context of his conduct after the separation. Although respondent twice raped petitioner while they lived together, the court noted that "petitioner has not suggested that respondent has sought, threatened, or attempted to engage in sexual conduct with her since they separated." *Id*. at 389. And although respondent told petitioner in June 2017 that he would kill her if she ever left him, the court noted that "respondent made the threat only once and there is no evidence that he has repeated the threat or taken any steps to harm petitioner or compromise her safety." *Id*. at 390.

The court concluded that respondent's conduct after the separation was not threatening. Instead, the erratic messages from respondent merely reflected his "emotional reaction to petitioner having left their marriage and his anger and frustration regarding restrictions on his time

with J." *Id.* at 389. And the court discounted respondent's "persistently angry demeanor" in his face-to-face meetings with petitioner. *Id.* According to the court, while petitioner's distress was understandable, "in the absence of any evidence that respondent has caused or attempted to cause petitioner bodily injury, and in the absence of any evidence that respondent has sought out or pursued petitioner in any other contexts since they separated[,] respondent's conduct is insufficient to demonstrate that petitioner is in imminent danger of further abuse." *Id.* Petitioner sought review in this court, which we allowed.

## II. ANALYSIS

Petitioner presents two arguments on review. First, petitioner argues that the Court of Appeals misinterpreted, and therefore misapplied, the statutory phrase "imminent danger of further abuse." ORS 107.718(1). Second, petitioner argues that the Court of Appeals erred in concluding that the record failed to support the trial court's conclusion granting the protective order.

### A. *Interpretation of the Statute*

Petitioner argues that the Court of Appeals misinterpreted the statutory phrase "imminent danger of further abuse," ORS 107.718(1), by imposing a temporal limit on potential future abuse and by requiring a petitioner who has separated from the respondent to satisfy specific factual standards—namely, demonstrating a pattern of abuse that continued after the separation. In considering these issues of statutory interpretation, we begin with the text and context of the statute and consider the legislative history as appropriate. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

#### 1. *Temporal limit*

In determining whether petitioner established imminent danger of further abuse, the Court of Appeals considered whether there was a chance of further abuse "in the near future." *Buell*, 296 Or App at 389. Petitioner contends that the court erred in imposing the temporal limit of "near future." Respondent points out that the plain

meaning of the term "imminent" imposes a temporal limit. *See Webster's Third New Int'l Dictionary* 1130 (unabridged ed 2002) (defining "imminent" to mean "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," and "menacingly near"). As a result, respondent argues that the Court of Appeals did not err.

Although the legislature did not define the phrase "imminent danger," it provided that "[i]mminent danger under this section includes but is not limited to situations in which the respondent has recently threatened petitioner with additional bodily harm." ORS 107.718(5). That is consistent with, and provides no reason to depart from, the plain meaning of "imminent." Further, when the legislature has not defined a word and the word is not a term of art, as "imminent" is here, we usually give a term its plain meaning. *State v. Turnidge (S059155)*, 359 Or 364, 383, 374 P3d 853 (2016).

Petitioner's argument for not giving "imminent" its plain meaning turns largely on legislative history. That history indicates that, before 1999, the statute required a petitioner to establish an "immediate and present danger of further abuse." ORS 107.718(1) (1997). In 1999, however, the legislature changed that standard to "imminent danger of further abuse." Or Laws 1999, ch 1052, §§ 9, 9a. That change from "immediate and present danger" to "imminent danger" was proposed to "soften the standard" imposed on petitioners seeking restraining orders. Testimony, House Committee on Judiciary, Subcommittee on Civil Law, SB 318, May 12, 1999, Ex A (statement of Judge Stephen Herrell).

According to petitioner, the plain meanings of "immediate" and "present" are the same as the plain meaning of "imminent"—they all mean "near at hand" or something equivalent. Petitioner contends that the legislature could not have intended to give "imminent" its plain meaning while also intending to soften the "immediate and present" standard that was already in place. As a result, petitioner argues that, to soften the previous standard, we should interpret "imminent danger of further abuse" as imposing no temporal limit at all.

We disagree. When the text is clear, "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Gaines*, 346 Or at 171 (internal citation and quotation marks omitted). When the text is unclear, the words chosen by the legislature might not be the best evidence of the legislature's intent. But, in this case, the text is clear that the legislature intended to retain a temporal limit. That is clear because the word "imminent" is, and functions solely as, a temporal limit. It is, therefore, not possible to reconcile the legislature's use of the word "imminent" with petitioner's argument that the legislature intended to impose no temporal limit.

The legislative history does not suggest otherwise. Although both "immediate and present danger" and "imminent danger" refer to dangers that are "near at hand," Judge Herrell testified that trial courts and petitioners frequently understood the phrase "immediate and present danger" as referring only to dangers that are *more* near at hand than would be required to satisfy an "imminent danger" standard. Whether or not that is a fair description of the distinction between those phrases, Judge Herrell reported that it was a distinction that parties and trial courts were making.[2] However, that does not suggest an abandonment of a temporal limit. Instead, it suggests a relaxation of the temporal limit, as compared to how the previous limit was being applied. We therefore find no error in the Court of Appeals'

---

[2] Judge Herrell testified:

"For example[,] at present, the Court cannot issue a FAPA restraining order in a situation whereby [a] petitioner [who has previously been abused] has just received a telephone threat from the abuser who happens to live in another town or another state but is threatening to come to harm the petitioner sometime in the imminent future. The same would be true if the abuser is incarcerated but the abuser's release date is imminent but not immediate. There are, of course, many such examples.

"The usual response we get from petitioners in these cases is: 'I guess I have to wait until something bad actually happens to me.' Frankly, I have to agree, but it certainly seems like the wrong approach to me.

"Perhaps the solution would be to replace the words 'immediate and present danger' in ORS 107.710 [and ORS 107.718] with the words 'imminent danger.'"

Testimony, House Committee on Judiciary, Subcommittee on Civil Law, SB 318, May 12, 1999, Ex A (statement of Judge Stephen Herrell).

requirement that the danger of future abuse must exist in the "near future."

### 2. *Requiring petitioners who have moved out to establish a pattern of abuse*

Petitioner also argues that the Court of Appeals erred in considering that petitioner had moved out and in imposing categorical factual requirements on petitioner because she had moved out. Specifically, petitioner reads the Court of Appeals opinion as holding that, if any petitioner has moved out of the home that had been shared with the respondent, then the petitioner must demonstrate that the respondent has engaged in a pattern of abuse that continued after the parties separated.

### a. Considering that petitioner moved out

Petitioner relies on ORS 107.710(3) to argue that the Court of Appeals erred in considering the fact that petitioner had moved out of the home. That statute provides that a person's right to relief under FAPA "shall not be affected by the fact that the person left the residence or household to avoid abuse." Based on that statute, petitioner argues that it is always improper for a court to deny relief under FAPA based, even in part, on the fact that a petitioner has left the home once shared with a respondent.

We do not, however, read ORS 107.710(3) as prohibiting the type of totality-of-circumstances analysis performed by the Court of Appeals in this case. Instead, ORS 107.710(3) prohibits a court from concluding that a petitioner is not in imminent danger of further abuse based *solely* on the fact that petitioner moved out to avoid abuse. A totality-of-circumstances analysis may include considering whether, after a petitioner has moved out, the danger to the petitioner changed. In doing so here, the Court of Appeals was considering all the circumstances in determining whether the petitioner was in imminent danger of further abuse, rather than giving decisive weight to one fact. As a result, the Court of Appeals' analysis is consistent with ORS 107.710(3).

### b.    Pattern of abuse

Petitioner next argues that the Court of Appeals erred by requiring petitioner to establish a pattern of abuse that continued after the parties separated. According to petitioner, there are circumstances where abuse that occurred before the parties separated—even a single incident of abuse—may be sufficient to establish that a petitioner is in imminent danger of further abuse. We agree with petitioner that it would be inappropriate for a court to require that all petitioners who have moved establish a pattern of abuse that continued after the separation. But we do not read the Court of Appeals opinion as imposing such a categorical test.

Instead, the Court of Appeals appropriately reviewed "the totality of the circumstances." *Buell*, 296 Or App at 390. As part of that analysis, the court first stated that "it *can* be significant, in the FAPA context, if the relationship between victim and abuser has changed once they no longer live[ ] together." *Id.* at 385 (emphasis added; internal citations and quotation marks omitted). The court then stated, "In those circumstances [where a petitioner has moved out], even when the relationship was abusive and volatile when the parties lived together, that past history *may—at least in some circumstances*—not be sufficient to demonstrate that the petitioner remains in imminent danger of being abused." *Id.* (emphasis added). The court did not say that the parties' separation would be significant in every case. And the court did not say that, when parties have separated, a respondent's history of abuse while living with the petitioner could never be sufficient, by itself, to establish an imminent danger of further abuse.

The court did conclude, as petitioner points out, that the record in this case "does not establish a repetitive pattern of conduct that qualifies as abuse under FAPA that could support an inference that the abuse will occur again in the near future." *Id.* at 389. But we do not read that statement as requiring a pattern of abuse. Instead, the Court of Appeals held that respondent's behavior while the parties lived together, together with his behavior after the separation, failed to establish that petitioner was in imminent danger of further abuse. We understand the court's opinion

as stating that petitioner's case would have been stronger if she had established a more consistent pattern of abuse while the parties lived together or if she had established that the pattern of abuse continued after the parties no longer lived together. Those were specific statements about petitioner's case and not a general statement about the elements needed to establish imminent danger of further abuse. We therefore reject petitioner's argument that the Court of Appeals misinterpreted the statutory phrase "imminent danger of further abuse." ORS 107.718(1).

B.  *Whether the Record Was Sufficient to Support the Trial Court's Conclusion*

Even though the Court of Appeals did not err in its interpretation of the statute, petitioner nevertheless argues that the Court of Appeals erred in its determination that the record was insufficient to support the trial court's conclusion that respondent represented an imminent risk of further abuse to petitioner. Appellate courts review a trial court's legal determinations for legal error and the trial court's findings of fact for any evidence in the record to support those findings. *Botofan-Miller and Miller*, 365 Or 504, 505, 446 P3d 1280 (2019); *Buell*, 296 Or App at 381.[3] The dispute is whether the trial court's findings of fact are sufficient to support the trial court's conclusion that petitioner was in imminent danger of further abuse.

To support that conclusion, the trial court was required to find that respondent was reasonably likely to abuse petitioner in the near future. The trial court was not required to find that respondent had a specific plan to abuse petitioner. If respondent represented a continuing threat to petitioner such that, within the near future, he was reasonably likely to abuse her, then she was in imminent

---

[3] On appeal in an equitable action, which includes this case, the Court of Appeals has the discretion to review the record *de novo* and make its own findings of fact, thus affording no deference to the trial court's factual findings. *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."). But the court did not exercise that discretion in this case.

danger of further "abuse," as that term is defined under ORS 107.705(1).

The trial court made no express findings of fact on that issue. Instead, the trial court's findings consisted primarily of its conclusion that petitioner credibly testified as to respondent's past behavior, including past incidents of abuse, and that respondent's denials were not credible. The trial court used its conclusions about respondent's past behavior to draw factual inferences about respondent's intentions and future state of mind. That was as it should be. In deciding whether to issue a protective order, a trial court always will be making an assessment about the likelihood of a respondent's future behavior. Here, although the trial court did not make that assessment expressly, it did issue the protective order signifying its conclusion that it was reasonably likely that respondent would abuse petitioner in the near future.

When a trial court does not make express findings of fact, "we will presume that the facts were decided in a manner consistent with the [trial court's] ultimate conclusion" as long as there is evidence in the record to support those implicit findings. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968); *see also State v. Jackson*, 364 Or 1, 21, 430 P3d 1067 (2018) ("To the extent that the trial court did not make express findings, this court will presume that the court decided the facts in the light most favorable to the defendant, who prevailed below."). That includes accepting "reasonable inferences and reasonable credibility choices that the trial court could have made." *Botofan-Miller*, 365 Or at 505-06.

The question on review, therefore, is whether the evidentiary record is capable of supporting the trial court's inference that respondent was reasonably likely to abuse petitioner in the near future. An evidentiary record may support a range of factual inferences about the extent to which a respondent is likely to engage in abusive conduct. In some cases, that range might be wide; in others, it might be narrow. And, depending on the evidentiary record, different courts might reasonably draw contrary inferences that lead to different outcomes. The role of the reviewing court is to

determine whether, based on the totality of circumstances, a reasonable factfinder could draw the factual inferences necessary to support the conclusion that petitioner was in imminent danger of further abuse.

In this case, there is ample evidence in the record to support the factual inferences that we must presume that the trial court made. Although respondent acknowledges the trial court's findings of historical fact—namely, that respondent twice raped petitioner and threatened to kill her if she left him—respondent argues here, as he did in the Court of Appeals, that the parties' circumstances had changed between when the prior incidents of abuse occurred and, months later, when petitioner sought the protective order. Respondent relies on the fact that the parties were no longer living together and on the fact that respondent had not yet acted on or repeated the threat to kill petitioner. Respondent is correct that, as a part of a totality-of-circumstances assessment, a court must consider those facts, but respondent is incorrect in arguing that those facts, as a matter of law, preclude a conclusion that respondent posed an imminent risk of further abuse to petitioner.

Respondent's reliance on the fact that the parties were no longer living together is unpersuasive. Although there might be cases where the parties' separation necessarily represents a change in circumstances that mitigates the risk of further abuse, there are also likely to be many cases where a trial court would be entitled to conclude that the parties' separation could be the impetus for further abuse. Abuse often occurs not because the parties were incompatible roommates, where the tension between them could be expected to dissipate when they are no longer living together. Instead, abuse is frequently the result of one party attempting to control the other party. *See* Oregon Domestic Violence Fatality Review Team, *Report and Recommendations on Improving the Efficacy of Oregon's Family Abuse Prevention Act (FAPA) Order,* 1 (2015) (noting that domestic violence is often committed "with the goal of establishing and maintaining power and control"). In those cases, the parties' separation might heighten the risk of further abuse. *See id.* at 3 ("It has been consistently shown that at the time of

separation a domestic violence perpetrator will increase his abuse in order to maintain control over her and the relationship."). Based on the trial court's findings, this is clearly one of those cases. Respondent threatened to kill petitioner *if she left him*. And the parties were no longer living together because *petitioner left respondent*. As a result, the trial court was entitled to weigh the fact of the parties' separation in favor of granting the protective order.

The passage of time and the fact that petitioner had not acted on or repeated the threat also do not preclude the trial court's conclusion. The question remains one about respondent's intentions and state of mind. The trial court, as a finder of fact, could reasonably view respondent's persistently erratic and angry behavior between June and October as establishing that respondent maintained the hostility and profound disregard for petitioner previously demonstrated through the incidents of rape and threat of murder. Respondent discounts that erratic and angry behavior as an emotional response to the breakup of his family. Whether or not that is a reasonable assessment of those facts, it is certainly not the only reasonable assessment. Not all erratic and angry behavior will be grounds for a protective order. But where the erratic and angry behavior is persistent and carried out by a respondent who has raped and threatened to kill a petitioner, a trial court reasonably may infer from those facts that the respondent is reasonably likely to abuse the petitioner in the near future. The trial court's conclusion that petitioner was in "imminent danger of further abuse" is supported by evidence in the record and we therefore must affirm it.

As noted, the Court of Appeals did not resolve respondent's argument that the record in this case could not support the trial court's conclusion that respondent represented a credible threat to petitioner's physical safety. *Buell*, 296 Or App at 385. We remand for the court to address that issue in the first instance.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.