Argued and submitted December 6, 2019, reversed August 12, 2020

H. M. H.,
*Petitioner-Respondent,*

*v.*

Jeromy Jay HESS,
*Respondent-Appellant.*

Linn County Circuit Court
18PO05322; A168659

473 P3d 103

Under the Family Abuse Prevention Act (FAPA), petitioner obtained a restraining order against respondent, her soon-to-be-ex-husband, and the trial court continued that restraining order after a contested hearing. Respondent appeals, challenging the sufficiency of the evidence. Respondent admits that there is evidence that petitioner was the victim of abuse committed by him within 180 days preceding the filing of the petition, which is the first requirement for a FAPA restraining order. Specifically, respondent admits that there is evidence that he assaulted petitioner during an altercation about Christmas decorations on the day that he was moving out of the family home. Respondent argues, however, that the only evidence is that that event was an isolated incident in a lengthy marriage and that the evidence is insufficient to establish either of the other two requirements for a FAPA restraining order: that there is an imminent danger of further abuse to petitioner, and that respondent represents a credible threat to petitioner's physical safety. *Held*: The trial court erred in continuing the restraining order. On this record, the evidence was insufficient to establish that there is an imminent danger of further abuse to petitioner, obviating the need to reach the credible-threat issue.

Reversed.

David E. Delsman, Judge.

Ryan Carty argued the cause and filed the briefs for appellant.

John E. Kennedy argued the cause for respondent. Also on the brief were Jeffrey M. Clayson and Morley Thomas Law.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed.

**AOYAGI, J.**

Petitioner obtained a Family Abuse Prevention Act ("FAPA") restraining order against respondent, her soon-to-be-ex-husband, which the trial court continued after a contested hearing. Respondent appeals, challenging the sufficiency of the evidence. Respondent admits that there is evidence that he assaulted petitioner on the day that he was moving out of their former home. However, he asserts that that single incident is insufficient to support a FAPA restraining order under the applicable legal standard. For the following reasons, we agree with respondent that the evidence is insufficient to support the restraining order and, accordingly, reverse.

### FACTS

No party has requested *de novo* review, and we do not exercise our discretion to provide *de novo* review. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c). We are therefore bound by the trial court's factual findings if they are supported by any evidence, and, to the extent that the trial court did not make express findings on disputed issues of significance, we presume that it made implicit findings consistent with its ultimate judgment. *J. V.-B. v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017). We state the facts in accordance with that standard.

Petitioner and respondent married in 1999, had three children together, and separated in February 2015. Petitioner and the children stayed in the family home. Despite the separation, respondent also continued to live in the family home—although he traveled a lot of the time for work—and kept his clothes and belongings there, mostly in the garage.

In September 2017, respondent initiated divorce proceedings. That same month, the parties had a verbal disagreement about how to split up the Christmas decorations, after which petitioner no longer wanted to be alone with respondent and avoided conversing with him alone. If petitioner knew that she might be alone with respondent, she would use her cell phone to record the interaction.

In May 2018, the court issued a temporary order in the divorce proceeding, which respondent understood to require him to move out of the family home by June 1.

On May 31, respondent brought a trailer to the family home to move his belongings. Respondent removed some sentimental items, which caused petitioner concern about other sentimental items, so she took several totes of Christmas decorations from the house and placed them in her car to safeguard them until the property division was resolved. Respondent spent the night of May 31 at the family house.

When petitioner left for work on the morning of June 1, respondent's belongings were still in the house. She returned at 7:30 p.m. Respondent was still there, so she locked her car to make sure that he could not get the totes. Respondent flipped her off. Petitioner went into the house to get her bag for a planned trip to her sister's. While she was in the house, respondent used his key to open petitioner's car door, believing that the totes might contain sentimental items of his. When petitioner came outside, she saw respondent inside her car and raced to the trailer (which was backed up to the house) to see what he had taken. From the trailer, petitioner yelled at respondent to get out of her car. Respondent came around the side of the trailer and "started, like, coming at [her]." Petitioner fell backwards into the opening of the trailer, and respondent reached for her. Things were happening really fast, and petitioner did not want respondent to put his hands on her, so, believing that he was going for her neck, she "really started to scream and fight him off." At that point, respondent grabbed hold of petitioner, moved her away from the trailer opening, and pushed her down. Petitioner's feet came out of her flip-flops, and she fell, hitting her head on the concrete driveway. Respondent cursed at petitioner, calling her a "fucking bitch," a "fucking cunt," and a "fucking whore." Respondent closed the trailer doors and drove away.

Petitioner called the police. When the police arrived, petitioner was distraught, crying, and anxious. She had two cuts on her fingers, some abrasions on her bare feet, and some redness and slight swelling on the back of her head.

Petitioner told the officer that the incident was the "most egregious offense in their marriage." She described her pain level on a scale of 10 as 7 or 8 when her head hit the driveway and 2 or 3 by the time of the question. The police arrested respondent later that night, and he was subsequently charged with assault.

Respondent had no contact with petitioner after June 1 and made no attempt to contact her. On June 4, petitioner applied for and obtained a FAPA restraining order in an *ex parte* proceeding. Respondent requested a hearing to contest the order.

The contested hearing was held in July. Both parties testified about the June 1 incident. Asked if there were any other times that she had been afraid of respondent, petitioner cited a single incident in September 2017—that occurred while she was *not* at home—in which respondent tried to pry open her locked bedroom door to retrieve their daughter's homework. She did not explain why that incident frightened her (and she does not rely on that incident in her arguments on appeal). Asked next why she was afraid that respondent would harm her in the future, petitioner testified:

> "Throughout this, his behavior has been escalating. He's been gradually getting more hostile and more aggressive. He likes to use his physical—his presence to, like, intimidate me, try to bully me into agreeing to things that he wants. He—his demeanor changes on a dime. Sometimes he will seem really calm and levelheaded, and then like the next minute, I'm getting really angry and hateful, hostile text messages, like completely unprovoked, out of the blue. Sometimes, like, I'll get hostile text messages when we haven't even seen or talked to each other for days."

Petitioner did not describe any specific text messages from respondent or offer any text messages into evidence. Despite petitioner's testimony about habitually recording respondent, no cell-phone recordings were admitted into evidence either, except for a short recording of the June 1 altercation.[1]

---

[1] Petitioner's cell phone was recording on June 1 when she walked outside and saw respondent inside her car. The video portion of that recording is minimally useful—as the camera is never purposefully directed at anything—but

The trial court ordered that the restraining order be continued. The court found that petitioner had been a victim of abuse committed by respondent within the 180 days before the filing of the petition, that there is an imminent danger of further future abuse, and that respondent represents a credible threat to petitioner's physical safety.

Respondent appeals. In his single assignment of error, he argues that the trial court erred in continuing the restraining order because the evidence is insufficient to establish an imminent danger of future abuse or a credible threat to petitioner's safety.

## ANALYSIS

As relevant here, to obtain a FAPA restraining order, petitioner had to establish by a preponderance of the evidence (1) that she was the victim of abuse committed by respondent within 180 days preceding the filing of her petition; (2) that there is an imminent danger of further abuse to her; and (3) that respondent represents a credible threat to her physical safety. ORS 107.718.[2] For FAPA purposes, "abuse" means attempting to cause or intentionally, knowingly, or recklessly causing bodily injury to a family or household member; intentionally, knowingly, or recklessly placing a family or household member in fear of imminent bodily injury; or causing a family or household member to engage in involuntary sexual relations by force or threat of force. ORS 107.705.

At the contested hearing, respondent admitted to the altercation with petitioner on June 1 but denied pushing her. On appeal, however, he recognizes that the evidence allowed the trial court to find that he pushed her, and he does not challenge the court's finding that he committed an act of abuse against petitioner during the 180-day

---

the audio portion captures about 14 seconds of the altercation, before cutting out abruptly. The June 1 recording is in evidence, although, given its limitations, we rely almost entirely on petitioner's testimony to describe the altercation. Other than the June 1 recording, petitioner offered only one other recording into evidence, but, after listening to part of it, the trial court excluded it as irrelevant, and that ruling is not challenged on appeal.

[2] The legislature amended some of the FAPA statutes in 2019, but those amendments are immaterial to our analysis, so all citations are to the current statutes.

statutory period. That is, respondent does not contest that petitioner established the first requirement for a FAPA restraining order. He disputes only whether she established the second and third requirements. We therefore turn to the sufficiency of the evidence for the finding on the second requirement—that there is an imminent danger of further abuse to petitioner—which proves dispositive. Because the second requirement is dispositive, we do not reach the third requirement, *i.e.*, whether there was sufficient evidence to find that respondent represents a credible threat to petitioner's physical safety.

For the imminent-danger requirement to be met, the trial court had to make a finding—supported by evidence—that respondent is "reasonably likely to abuse petitioner in the near future." *M. A. B. v. Buell*, 366 Or 553, 564, 466 P3d 949 (2020). Respondent does not need to have "a specific plan to abuse petitioner." *Id.* It is enough that he "represent[] a continuing threat to petitioner such that, within the near future, he [is] reasonably likely to abuse her." *Id.* at 564-65; *see also Holbert and Noon*, 245 Or App 328, 334-36, 260 P3d 836 (2011) ("imminent" danger of future abuse means danger in the "near future," not necessarily the *immediate* future). The standard is objective: "[E]vidence of subjective fear alone is insufficient to justify issuance of a FAPA restraining order." *J. V.-B.*, 284 Or App at 371. Petitioner had to "present evidence establishing that respondent's conduct, *in fact*, created an imminent danger of further abuse." *Id.* at 371 (emphasis in original; internal quotation marks and brackets omitted).

Broadly speaking, there are certain categories of cases in which we have typically concluded that FAPA's requirements for a restraining order were met. One such category is when the respondent has engaged in a pattern of physical or sexual violence against the petitioner, with or without express threats of future violence. For example, in *Fielder v. Fielder*, 211 Or App 688, 690, 695-96, 157 P3d 220 (2007), there was an imminent danger of further abuse where the respondent had engaged in "a continuing pattern" of physical and verbal abuse of the petitioner. In *Holbert*, 245 Or App at 337-38, the respondent's repeated death threats and past violence were sufficient to establish

an imminent danger of further abuse. In *P. K. W. v. Steagall*, 299 Or App 820, 822-23, 826-27, 452 P3d 1059 (2019), there was an imminent danger of further abuse where the respondent was physically violent toward the petitioner twice in the 180 days before the petition date, engaged in nonconsensual sexual activity with her once in the same period, and had violated the restraining order at least twice in eight weeks.[3]

Another category is when the respondent has engaged in a pattern of alarming—albeit not yet physically or sexually violent—behavior toward the petitioner, akin to stalking. In *Lefebvre v. Lefebvre*, 165 Or App 297, 299-303, 996 P2d 518 (2000), we affirmed the continuance of a FAPA restraining order where "no actual or overtly threatened physical violence" was alleged, but where the respondent had barricaded the petitioner out of her house, screamed obscenities in her face in front of their son, repeatedly called her and hung up, rummaged through her belongings during parenting time, called her late at night and described what she was wearing to bed, and tapped on her window at 1:30 a.m., and where the petitioner had previously had a six-month-long obsession about killing his former employer. In *Hubbell v. Sanders*, 245 Or App 321, 323-25, 263 P3d 1096 (2011), we affirmed the continuance of a FAPA restraining order where the respondent had engaged in a "continuing pattern of *** chilling behavior" after the petitioner ended their relationship—including frequenting her neighborhood, trespassing on her property, vandalizing her car, leaving unsettling voicemails, and engaging in a high-speed car chase—and there was evidence that he had a "dangerous obsession" with her.

Conversely, we have yet to affirm the continuance of a FAPA restraining order based on a single incident. In *G. M. P. v. Patton*, the parties got into an argument about

---

[3] By contrast, in *K. L. D. v. Daley*, 280 Or App 448, 449-51, 453-54, 380 P3d 1226 (2016), we reversed a FAPA restraining order on the basis of legally insufficient evidence where the respondent got in the petitioner's face, called her ugly names, said mean things, threatened to get custody of their daughter, and pantomimed her falling off a cliff while he and his daughter continued along happily—because, although there was "huge tension in the parties' relationship," there was no history of violence or threats of violence.

the respondent's need to move his trailer during a temporary separation, and the respondent threatened to "smash" the petitioner's car and destroy her belongings. 278 Or App 720, 721, 377 P3d 657 (2016). The argument escalated to a physical altercation, after which the respondent left. *Id*. "[V]iewing the evidence objectively, as we must," we held that it was insufficient to establish an imminent danger of further abuse to the petitioner. *Id*. at 722-23. The only evidence of aggressive or threatening behavior by the respondent was on the day of the argument, and, although his behavior that day "could be considered erratic, aggressive, and angry"—the words that the petitioner used to describe it—"it was not persistent." *Id*. at 723. There was no evidence that it was anything but an "isolated incident." *Id*.

Similarly, in *Poulalion v. Lempea*, we reversed a FAPA restraining order where the respondent had "squished" the petitioner in a doorway, and, later, the petitioner was frightened to see him in her yard when he came to retrieve his possessions. 251 Or App 656, 657, 284 P3d 1212 (2012). Even assuming that the "door squishing" incident constituted physical abuse, we concluded that, "[o]bjectively, there is no evidence that respondent posed an imminent danger of further abuse to the petitioner[.]" *Id*. at 659.

Every FAPA case must be evaluated on its own facts. Whether a FAPA restraining order is legally available always depends on the totality of the circumstances of the individual case. By loosely categorizing some of our existing case law, we do not mean to suggest otherwise, only to recognize certain common fact patterns. In a similar vein, we fully agree with petitioner that "[e]vidence of a history or pattern of abuse is not a prerequisite to the issuance and continuance of a [FAPA] order under ORS 107.718(1)." We cannot begin to imagine every possible scenario that could arise, and it is certainly feasible that, in a particular case, the circumstances could allow a FAPA restraining order to be issued based on a single incident of abuse. At the same time, we disagree with petitioner that *this* is that case. To the contrary, we agree with respondent that the evidence in *this* case is insufficient to support the restraining order.

In reviewing an imminent-danger finding, our role "is to determine whether, based on the totality of circumstances, a reasonable factfinder could draw the factual inferences necessary to support the conclusion that petitioner was in imminent danger of further abuse." *M. A. B.*, 366 Or at 565-66. Here, it is established that respondent assaulted petitioner on June 1, which was an act of abuse for purposes of FAPA, as well as a potentially criminal act, and certainly an act that we in no way condone or take lightly. An act of abuse within the past 180 days is only one of the three requirements, however, for a FAPA restraining order. The petitioner also must prove that that, objectively, there is an imminent danger of *further* abuse and that the respondent represents a credible threat to petitioner's physical safety.

To determine whether there is an imminent danger of further abuse—*i.e.*, that the respondent is "reasonably likely to abuse petitioner in the near future," *M. A. B.*, 366 Or at 564—the trial court necessarily must rely on evidence "about respondent's past behavior to draw factual inferences about respondent's intentions and future state of mind." *Id.* at 565; *see also P. K. W.*, 299 Or App at 825 ("At its core, that task required the court to forecast the future by evaluating past conduct and discerning the likelihood that abuse would occur again: a calculation laden with the peril of uncertainty that is intrinsically human."). We therefore consider the evidence of respondent's past behavior.

Petitioner and respondent were married for nearly 20 years. Except for the June 1 incident, there is no evidence of any other abuse within the meaning of FAPA. *See Fielder*, 211 Or App at 695 (stating that "a trial court may consider testimony regarding events outside the 180-day [statutory] window" to satisfy the imminent danger requirement). That is, there is no evidence that respondent had ever previously physically assaulted or injured petitioner, that he has ever threatened to physically injure petitioner, or that he has ever used force or threat of force against petitioner to engage in involuntary sexual relations.

Of course, evidence of past behavior that falls short of FAPA's definition of "abuse" may nonetheless be relevant to show that, in the totality of the circumstances,

respondent is likely to abuse petitioner a second time. The difficulty for petitioner is that there is no evidence in this record that would allow such an inference here. The only evidence regarding any bad past behavior by respondent are petitioner's unflattering but fundamentally subjective characterizations, unaccompanied by concrete examples.

In her testimony, petitioner described respondent as "unpredictable." She said that his behavior had been "escalating" (apparently meaning since the divorce proceedings began), "gradually getting more hostile and more aggressive," and that he used his physical "presence" to "intimidate" her and "try to bully" her into agreeing to things. She also testified to his sending "angry and hateful, hostile text messages." But petitioner did not provide a single concrete example. The *only* specific incident that she described in her testimony was the September 2017 door-prying incident, which occurred while she was not at home, and which she now appears to agree with respondent is not relevant to whether there is an imminent danger of further abuse.[4] Petitioner testified to a practice of recording her interactions with respondent, but no recordings were admitted into evidence, except for the June 1 recording. There is also not a single text message—or testimonial description of a specific text message—in evidence.

Without any specific evidence of what respondent actually said or did, petitioner's characterizations of his behavior as unpredictable, hostile, aggressive, intimidating, angry, or hateful are too subjective to permit nonspeculative factual inferences "about respondent's intentions and future state of mind." *M. A. B.*, 366 Or at 565. There is no way to know whether petitioner is referring to merely rude or boorish behavior in an increasingly strained relationship between two long-separated people who were growing tired of living together, or whether she is referring to behavior indicative of an imminent danger of further abuse to her— that is, imminent danger of bodily injury, the creation of

---

[4] In her FAPA restraining order application, petitioner listed the September 2017 door-prying incident as a prior act of "abuse." On appeal, however, petitioner emphasizes that she did not make that argument to the trial court at the hearing, concedes that the September 2017 incident was not "abuse" under FAPA, and makes no argument based on that incident.

fear of imminent bodily injury, or involuntary sexual relations by force or threat of force. ORS 107.705.

Although a history or pattern of abuse is not necessary to obtain a FAPA restraining order, in the absence of a history or pattern of abuse, the petitioner must point to *something* that allows the factfinder to find an imminent danger of further abuse. Here, petitioner suggests that the nature and severity of the June 1 assault itself is sufficient to allow that finding, but we cannot agree. Although any assault is serious, nothing about the June 1 assault is such as to allow an inference, based solely on the assault itself, that respondent is reasonably likely to abuse petitioner again. We also reject petitioner's argument that respondent's previous denial that he pushed her on June 1 (during his testimony at the hearing) allows a reasonable inference that he will assault her again. There are many reasons why two people may remember the same event differently, and it would be entirely speculative to make the specific inference that petitioner suggests.

Given the circumstances of this case, it is also relevant that the parties' living arrangements have changed. Such a change may be relevant, in the totality of the circumstances, to whether an imminent danger of further abuse exists. *M. A. B.*, 366 Or at 563. For example, in *J. K. v. Kargol*, 295 Or App 529, 533, 435 P3d 814 (2019), we reversed a FAPA restraining order in part because, although the parties had had a volatile relationship, the nature of their relationship changed once they no longer lived together, and they "were living apart without further incident and had very little contact." Similarly, in *J. V.-B.*, 284 Or App at 371, we reversed a FAPA restraining order in part because the parties had ceased cohabitating and had "only sporadic contact," which changed the dynamic of a relationship that had previously been "volatile" and "punctuated by acts of physical aggression, threats, and anger by respondent." Of course, a change in the nature of the parties' relationship or living arrangements does not necessarily decrease the danger of future abuse—in some cases, it may be insignificant or even increase the danger. *See, e.g.*, *M. A. B.*, 366 Or at 566-67 (where the respondent had threatened to kill the petitioner if she left him, and she subsequently left him, the

parties' separation *heightened* the danger of further abuse to her, rather than reducing it, given the totality of the circumstances as found by the trial court).

Here, at the time of the June 1 assault, the parties had been separated for over three years but had continued to live together. Although the specifics are unknown, it is fair to infer from petitioner's testimony that tensions were escalating in the last year that they lived together, particularly after respondent filed for divorce. There is no evidence that respondent was dangerously obsessed with petitioner, however, or in any way sought to maintain or reestablish a relationship with her. To the contrary, the only evidence is that he was gradually becoming more hostile toward her (whatever that might specifically mean) as they continued to live together during their divorce proceedings. That hostility came to a head on literally the last day that respondent was moving out of the house, when they got into a property dispute over Christmas decorations that ended in respondent pushing petitioner to the ground and driving away. In that context, the fact that the parties are no longer cohabitating and are in the process of getting divorced (which will resolve the property division) does reduce the risk of further abuse.

Finally, respondent points out that he made no effort to contact petitioner after June 1, before or after the entry of the restraining order on June 4. Lack of compliance with a restraining order tends to be more relevant than compliance when it comes to assessing whether there is an imminent danger of further abuse, because, once a restraining order is entered, a lack of further contact may simply show that the order is working. *See, e.g.*, *P. K. W.*, 299 Or App at 826-27 (considering lack of compliance with restraining order as relevant to whether there was an imminent danger of further abuse to the petitioner). Respondent's total lack of contact or attempted contact with petitioner after June 1 is, at most, minimally relevant as part of the totality of the circumstances.

In sum, considering the totality of the circumstances, the evidence in this record is insufficient to support the trial court's finding of an imminent danger of further

abuse to petitioner. The June 1 assault constitutes a predicate act of abuse for a FAPA restraining order, but it is not enough on its own to support a finding of imminent danger of further abuse to petitioner, nor is there any other evidence in the record that would allow that finding.

Reversed.