808 May 29, 2025 No. 480

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

R. C.,
*Petitioner-Appellant,*

*v.*

CHRISTOPHER CALAVAN,
*Respondent-Respondent.*

Klamath County Circuit Court
24SK00210; A184399

Stephen R. Hedlund, Judge.

Argued and submitted April 10, 2025.

George W. Kelly argued the cause and filed the briefs for appellant.

Andy Simrin argued the cause for respondent. Also on the brief was Andy Simrin PC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Petitioner appeals from a judgment denying his petition for a stalking protective order (SPO). The trial court found that there was a single uninterrupted contact and thus found that the requirements of ORS 30.866(1) (requiring "repeated and unwanted contact"; ORS 163.730(7) (2015), *amended by* Or Laws 2024, ch 90, § 1 ("'Repeated' means two or more times.")), were not met.

On appeal, petitioner does not seek *de novo* review because, in his view, the sole question before us is a legal one, namely, whether there was "a single, uninterrupted contact." Accepting that framing of the legal issue, we consider whether the trial court committed legal error. *A. M. M. v. Hoefer*, 269 Or App 218, 219, 344 P3d 121 (2015). Doing so, we conclude that the trial court did not err in denying the SPO.

Petitioner and respondent are neighbors. On January 20, 2024, respondent was driving on a road near their homes when petitioner drove by him in a manner that respondent found upsetting. Respondent began chasing petitioner with his truck, driving quickly, close to petitioner's car, and weaving back and forth.[1] Petitioner drove to a sheriff's substation, where a deputy was parked. Petitioner explained to the deputy what was happening while respondent's wife got out of the truck and yelled at petitioner.[2] Petitioner was quite frightened and was concerned for his physical safety. Respondent drove off without any further contact with petitioner or the deputy.

Respondent testified that he then returned home, which was about seven miles from the substation. He explained that he sat on his couch for "a while." He then proceeded to drive to petitioner's home with his truck—which had a snowplow on the front—and build a snow berm to block petitioner's driveway. The snow berm was about 12-feet long and 2- to 3-feet high.

---

[1] Petitioner testified to contacts on days other than January 20, but the trial court determined that those did not qualify as contacts under the statute and petitioner does not argue otherwise on appeal.

[2] There is some dispute about whether respondent also got out of the truck. Because that fact is not material to our decision, and because it did not appear to be material to the trial court's decision, we do not address it further.

Two hours after the driving incident that ended at the sheriff's substation, and after petitioner had finished running errands, he returned home and discovered the snow berm. He could not drive over the berm and it took roughly 30 minutes for him to clear it out. He was "afraid" during that time and had a rifle nearby. He testified that, had an emergency arisen, police, fire, and medical officials would not have been able to access the house or his wife, who was inside.

The trial court denied petitioner's request for a stalking protective order. It found that there was "no doubt" that "that incident" took place and it expressed incredulity that respondent had not been charged with a crime for his actions. However, it found that there had not been multiple qualifying contacts:

> "There's been testimony about multiple incidents in regards to that date. In this circumstance, the Court does not find that there were multiple unwanted contacts. There's been no testimony regarding the temporal break in time that would constitute anything that would allow me to find that this was more than one continuous contact. *** I find that that incident was one continuous contact.
>
> "*****
>
> "[T]here was only one contact that has occurred that would constitute something that would leave the victim feeling alarm or—and that is objectively reasonable."

On appeal, petitioner contends that the trial court erred by deciding that there was a single uninterrupted contact. In his view, and relying on *State v. Zarazua*, 334 Or App 741, 557 P3d 1129 (2024), the trial court misunderstood the legal standard that applies in assessing whether multiple contacts occurred for purposes of obtaining a stalking protective order.

We conclude that the court did not commit legal error. In *Zarazua*, we reviewed the denial of a motion for judgment of acquittal on a criminal charge of stalking under ORS 163.732. 334 Or App at 742. The factfinder had found the defendant guilty and, on appeal, the defendant argued that, viewing the facts in the light most favorable to

the state, the record was nevertheless insufficient to find the elements of the crime. *Id.*

We explained that the evidence was sufficient to support the court's finding that the defendant had contacted the victim at least twice over the course of one night, that each of those contacts had alarmed the victim, and that her fear was objectively reasonable. *Id.* at 745. In doing so, consistent with our standard of review—assuming the trier of fact made every reasonable inference in favor of the state— we explained that the "defendant's contacts here were not linked by continuous conduct. They were distinct courses of conduct, involving different alarming behavior." *Id.* In support of that determination, we cited inferences that the factfinder was permitted to draw from the facts, including the way the victim felt between the two episodes and the fact that the defendant had ceased his initial behavior, focused on a different activity, and then embarked on a new and different course of conduct toward the victim. *Id.* at 745-46.

As noted, petitioner contends that, in this case, the trial court failed to apply the legal principle that we applied in *Zarazua*, and that that principle required the court to find that respondent engaged in more than one qualifying contact on January 20. However, we do not understand the trial court to have misunderstood or misapplied the legal standard. Instead, we understand the trial court to have simply viewed the evidence, and drawn inferences, differently than petitioner. Although some of the court's statements could be understood as being based on the sufficiency of the evidence, we are persuaded that, rather than articulating a view that the evidence was legally insufficient, the court was ultimately not persuaded, as a factual matter, that the events of January 20 were two separate contacts within the meaning of the statute. The court initially couched its reasoning in terms of findings: "[T]he Court does not find that there were multiple unwanted contacts." And it finished its reasoning the same way, explaining, given its view of the evidence it had heard, "there was only one contact that has occurred that would constitute something that would leave the victim feeling alarm or—and that is objectively reasonable."

Our standard of review requires us to review "the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021). Where, as here, the trial court did not make any express findings of fact, we "presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion as long as there is evidence in the record to support those implicit findings." *M. A. B. v. Buell*, 366 Or 553, 565, 466 P3d 949 (2020) (internal quotation marks and brackets omitted). As we understand the court's ruling, the inferences that the court drew from the evidence that petitioner presented did not persuade it that the events of January 20 constituted repeated, unwanted contacts that satisfied the requirements of ORS 30.866. It may be that its determination that there was only one qualifying contact was based on inferences—similar to the inferences we discussed in *Zarazua*—about how petitioner felt or what was in respondent's mind at the relevant times; or perhaps the court credited some of petitioner's evidence and did not believe other parts. Both of those possibilities were within the court's purview as the finder of fact.

In sum, we understand the court to have made its statement about a single contact as part of its factfinding rather than as a statement of a legal principle based on the sufficiency of the evidence, and, accordingly, we disagree with petitioner that the court misunderstood or misapplied the law.

Affirmed.